[S.F. No. 23391. In Bank. Apr. 7, 1976.]

CITIZENS FOR JOBS AND ENERGY et al., Petitioners, v.
FAIR POLITICAL PRACTICES COMMISSION, Respondent.

**COUNSEL**

Bodle, Fogel, Julber, Reinhardt & Rothschild, Stephen Reinhardt, Joel Klevens, Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball, John R. McDonough, Loren R. Rothschild and Allan E. Tebbetts for Petitioners.

Gibson, Dunn & Crutcher, Robert S. Warren and Don Howarth as Amici Curiae on behalf of Petitioners.

Jerome B. Falk, Jr., Steven L. Mayer, Howard, Prim, Rice, Nemerovski, Canady & Pollak, Daniel H. Lowenstein, Robert M. Stern, Kenneth Finney and Natalie West for Respondent.

**OPINION**

**MOSK, J.**—This proceeding challenges the constitutionality of Government Code sections 85300-85305, which limit the amount that may be spent to influence the electorate to vote for or against a statewide ballot proposition.

The sections in question are part of the Political Reform Act of 1974. (Gov. Code, tit. 9, § 81000 et seq.) They provide in effect that the supporters and the opponents of a statewide measure, taken collectively, may each spend at least $500,000 in their campaign, but neither may spend more than 8 cents per member of the voting age population.

(§ 85303.)[1] The permissible expenditure level between these two limits depends in each case on how much the opposing side intends to spend, because neither side may spend in excess of $500,000 more than the other. (*Id.*)

Any committee planning to spend more than $10,000 for this purpose (§ 85301) must disclose the amount in a statement of intent filed with the Fair Political Practices Commission (hereinafter called the commission). (§ 85302.) If the commission finds that the committee "is in good faith in supporting or opposing the measure and that it has the intention and ability to incur the expenditures," it shall approve the statement of intent and notify the committee of the amount it is permitted to spend. (*Id.*) If the aggregate amounts intended to be spent by several committees on the same side exceed the permissible expenditure level, the commission will apportion the latter amount among such committees according to an arithmetical formula. (§ 85304.)

On December 8, 1975, the validity of the foregoing statutory scheme was brought into question by a petition for original writ of mandate filed with this court by a committee known as Citizens for Jobs and Energy (hereinafter called the committee).[2] The committee contended that the cited statutes contravene the guarantees of freedom of speech of the First Amendment to the United States Constitution and article I, section 2, of the California Constitution because the spending limitations they impose (1) are a substantial and direct infringement on the right of citizens to disseminate and to receive political communications, (2) are not justified by a compelling governmental interest furthered by the Political Reform Act of 1974, (3) are unreasonably low in amount, (4) are implemented by a system of prior restraints, and (5) are void for vagueness, particularly in their definition of "expenditures."

On January 21, 1976, we issued an alternative writ of mandate directing the commission (1) to vacate its allocation limiting the amount which the committee may spend up to February 1, 1976, (2) to refrain from making any future allocations limiting the committee's expenditures, and (3) to apply the Political Reform Act of 1974 without enforcing any limitations on ballot measure expenditures, or to show cause why it

---

[1]At the present time this maximum amounts to approximately $1.2 million.

[2]The committee was organized to oppose a statewide measure on the June 1976 primary election ballot known as the Nuclear Power Plants Initiative. The petitioners also include the treasurer and cochairmen of the committee, together with two registered voters.

should not do so. Pending final determination of the proceeding we stayed the operation of Government Code sections 85300-85305.

■ On January 30, 1976, the United States Supreme Court filed its decision in *Buckley* v. *Valeo,* 424 U.S. 1 [46 L.Ed.2d 659, 687, 96 S.Ct. 612]. The case dealt, inter alia, with the constitutionality of the following provisions of section 608 of the Federal Election Campaign Act of 1971, as amended in 1974: (1) no person may make any expenditure "relative to a clearly identified candidate" for federal office in excess of $1,000 in any calendar year; (2) no candidate may make any expenditure from his personal funds in any calendar year in excess of certain fixed ceilings;[3] and (3) no candidate may spend in the course of one campaign more than certain aggregate amounts, which are determined either by the office or by the size of the voting age population of the state.[4]

In *Buckley* the Supreme Court struck down each of the foregoing statutory limitations on campaign spending as violative of the freedom of speech guarantee of the First Amendment. The court proceeded from the premise that "A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached. This is because virtually every means of communicating ideas in today's mass society requires the expenditure of money. The distribution of the humblest handbill or leaflet entails printing, paper, and circulation costs. Speeches and rallies generally necessitate hiring a hall and publicizing the event. The electorate's increasing dependence on television, radio, and other mass media for news and information has made these expensive modes of communication indispensible instruments of effective political speech." (Fn. omitted.) (424 U.S. 1, 19 [46 L.Ed.2d 659, 687-688, 96 S.Ct. 612, 634-635].)

Applying the strict scrutiny test, the court rejected the claim that the restrictions on political communication imposed by the federal act are justified by such governmental interests as prevention of corruption or

---

[3]The ceilings are $50,000 for presidential or vice-presidential candidates, $35,000 for candidates for the United States Senate, and $25,000 for most candidates for the House of Representatives.

[4]For example, presidential candidates may spend no more than $10 million seeking nomination and $20 million seeking election. A senatorial candidate may spend, in a primary election, the greater of $100,000 or 8 cents per member of the voting age population, and in a general election, the greater of $150,000 or 12 cents per member of such population. Most candidates for the House of Representatives may spend no more than $70,000.

the appearance of corruption in the political process, equalization of the relative financial ability of candidates or groups to influence the outcome of elections, or reduction of the rapidly increasing cost of campaigns. (424 U.S. 1 [46 L.Ed.2d 659, 699-710, 96 S.Ct. 612, 647-653].) The court concluded that the cited provisions of the federal act "place substantial and direct restrictions on the ability of candidates, citizens, and associations to engage in protected political expression, restrictions that the First Amendment cannot tolerate." (Fn. omitted.) (424 U.S. 1, 58-59 [46 L.Ed.2d 659, 710, 96 S.Ct. 612, 653-654].)

It is apparent that the *Buckley* decision is dispositive of the proceeding at bar, and the commission so concedes. While *Buckley* invalidated limitations on spending to influence the vote on candidates for office, rather than, as here, an initiative measure, the challenged federal and California provisions are similar in material respects and the court's reasoning is equally applicable to both. Indeed, the court foreshadowed our conclusion herein when it explained that "Advocacy of the election or defeat of candidates for federal office is *no less entitled* to protection under the First Amendment than the discussion of political policy generally or *advocacy of the passage or defeat of legislation.*" (Italics added; fn. omitted.) (424 U.S. 1, 48 [46 L.Ed.2d 659, 704, 96 S.Ct. 612, 648].)

We hold that under the rule of *Buckley* v. *Valeo,* Government Code sections 85300-85305 are void because they violate the freedom of speech guarantee of the First Amendment to the United States Constitution. In view of this holding we need not reach the remaining grounds of invalidity urged by petitioners.

In its return the commission has advised us that it will forthwith comply with the terms of our alternative writ, and in addition will refrain from enforcing the statutes in question against any other persons or groups. There is thus no need for issuance of a peremptory writ; and the alternative writ, having served its purpose, may be discharged.

The alternative writ of mandate is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Clark, J., and Richardson, J., concurred.

Tobriner, J., and Sullivan, J., did not participate therein.