[S.F. No. 23450. Nov. 29, 1976.]

GEORGE GRAHAM HARDIE et al., Petitioners, v.
MARCH FONG EU, as Secretary of State, etc., et al., Respondents.

**COUNSEL**

Frank Duncan and Armen Hampar for Petitioners.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, Floyd D. Shimomura, Deputy Attorney General, Stanford D.

Herlick, County Counsel (San Bernardino), Craig S. Jordan, Deputy County Counsel, William M. Siegel, County Counsel (Santa Clara), Robert T. Owens, Deputy County Counsel, Adrian Kuyper, County Counsel (Orange), Laurence M. Watson, Deputy County Counsel, John B. Clausen, County Counsel (Contra Costa), Peter J. Lucey, Deputy County Counsel, Donald L. Clark, County Counsel (San Diego), Bruce W. Beach, Deputy County Counsel, John B. Heinrich, County Counsel (Sacramento), Richard J. Moore, County Counsel (Alameda), James E. Jerreris, Assistant County Counsel, Daniel H. Lowenstein, Robert M. Stern, Kenneth H. Finney, Natalie E. West, Michael J. Baker and Howard, Prim, Rice, Nemerovski, Canady & Pollak for Respondents.

**OPINION**

**RICHARDSON, J.**—In this original mandamus proceeding, we consider the constitutionality of sections 85200-85202 of the Government Code, which impose limitations on the amount that can be expended in furtherance of the circulation of petitions by which initiative measures may qualify for the statewide ballot. We conclude that these sections infringe impermissibly upon rights of speech and association guaranteed by the First Amendment to the United States Constitution. Accordingly, we will issue our peremptory writ of mandate commanding respondent state officials to refrain from enforcing them. However, we uphold provisions of the Elections Code (§ 3507) which limit the time for petition circulation.

Petitioner Hardie is a "proponent" of the Greyhound Dog Racing Initiative sought to be placed on the November 1976 ballot, and petitioner Keaton is a "person" who desires to incur expenditures in behalf of the measure's qualification. The "proponents" of a measure are defined as those persons who commence the qualification procedure by presenting to the Secretary of State a request for preparation of a title and summary of the initiative. (Elec. Code, § 3500.5.) As we will indicate, the respective capacities of Hardie as "proponent," and Keaton as "person," have significance in the pattern of the relevant statutes.

Government Code sections 85200-85202, the challenged statutes, were enacted as part of the Political Reform Act of 1974 (the Act). Section 85200 generally prohibits any "person" from incurring expenditures "in

furtherance of . . . circulation or qualification of a statewide petition . . ." unless such expenditures are expressly authorized by the "proponent." Subdivisions (a) and (b) of the section contain an express exemption from application of the Act for those unreimbursed personal expenses "incidental" to "circulation" and "advertising, and speech" expenditures not "directly incidental" to "circulation."

Section 85201 limits the *total* expenditures by *all* persons "in further-ance of the circulation or qualification of a statewide petition" to 25 cents times the number of signatures required for qualification, as adjusted for changes in the cost of living.

Section 85202 empowers the Fair Political Practices Commission (Commission) or any voter to seek a court order restraining the Secretary of State from submitting to the electorate any measure which, it is shown by "clear and convincing evidence," would not have qualified but for violations of sections 85200 and 85201. Under other provisions of the Government Code, the Commission is also empowered, after a hearing, to issue cease and desist orders and to impose administrative sanctions where violations of the Act were found. (Gov. Code, §§ 83115, 83116.)

These sections reflect a legislative intent to regulate, in considerable detail, the circulation process. However, the parties agree that the effect of the sections has been restricted by a holding of the Sacramento Superior Court (*Committee for a Two Thirds Vote* v. *Eu* (Jan. 8, 1976) No. 258866), which limits the reach of the expenditure limitation to "paid petition circulators." Respondent Commission has amended its interpre-tative regulation accordingly. (Cal. Admin. Code, tit. 2, § 18550.)

Petitioners, however, direct a pointed challenge to these statutes, even as so limited, arguing that they constitute an impermissible infringement on petitioners' First Amendment rights and that they run afoul of the California Constitution as well. We issued our alternative writ of mandate and stayed the enforcement of sections 85200-85203 pending our resolution of the matter. Respondents Secretary of State and Fair Political Practices Commission have filed returns opposing the issuance of a peremptory writ. Respondents county registrars of voters (who have initial responsibility for filing and screening initiative petitioners) have disclaimed any active interest in this litigation and express a willingness to comply with any disposition of the case.

██ Our examination of the contentions of the respective parties is aided by the recent holding of the United States Supreme Court in *Buckley v. Valeo* (1976) 424 U.S. 1 [46 L.Ed.2d 659, 96 S.Ct. 612]. In *Buckley* the high court struck down provisions of the Federal Election Campaign Act of 1971, as amended, which sharply limited expenditures by, or in behalf of the election of, a candidate for federal office. Finding that virtually every means of political communication in modern society requires or involves the expenditure of money, the high court concluded: "A restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." (*Id.*, at p. 19 [49 L.Ed.2d at p. 687].) Discerning no overriding governmental interest the high court held that such limitations infringed upon the First Amendment's guarantees of free speech and association.

· We subsequently recognized the applicability of *Buckley* to sections of the Act which imposed similar ceilings on expenditures for or against the passage of statewide ballot propositions. (*Citizens for Jobs & Energy* v. *Fair Political Practices Com.* (1976) 16 Cal.3d 671, 675 [129 Cal.Rptr. 106, 547 P.2d 1386].) The principles expressed in *Buckley* and *Citizens* have equal application to the process by which citizens seek to qualify such propositions for submission to the voters.

██ As defined by the Supreme Court, the purpose of the First Amendment is "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." (*Roth* v. *United States* (1957) 354 U.S. 476, 484 [1 L.Ed.2d 1498, 1506-1507, 77 S.Ct. 1304]; *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 269 [11 L.Ed.2d 686, 700, 84 S.Ct. 710, 95 A.L.R.2d 1412].) ██ Qualification of an initiative measure requires prior evidence of significant voter support in the form of petition signatures. It follows that the process of solicitation of these signatures, of necessity, involves discussion of the merits of the measure. The circulators themselves thus become unavoidably a principal means of advocacy of the proposal. Further, as the Commission implicitly concedes, limitations of the kind expressed in sections 85200-85202 may substantially hinder a proposal's initial access to the electoral process. Thus, a limitation on expenditures for the use of petition circulators, even though restricted to those who are compensated financially, directly and inevitably restricts "the amount of money a person or group can spend on political

communication during a campaign . . . ." (*Buckley* v. *Valeo, supra,* 424 U.S. 1, at p. 19 [46 L.Ed.2d 659, at p. 687].)

The consequent restraint on political speech imposed by the sections in question is not small. As we have noted, under the statutory qualification procedure, the petition circulators, whether "paid" or "volunteer," necessarily are a principal means of advocacy for a proposed initiative. To qualify a statewide initiative measure for the November 1976 ballot 312,404 valid signatures are required. Contrary to the Commission's contention, we cannot assume that any proposal capable of generating genuine voter support will necessarily attract at the outset sufficient "volunteer" circulators to do the job. Hence, even by limiting the applicability of the Act to "paid" circulators, there remains a demonstrable potential for serious infringement on the right to political communication guaranteed by the First Amendment.

We accordingly submit the challenged sections to that strict scrutiny appropriate to cases in which fundamental constitutional rights are affected. Using this test, we determine whether the restraints imposed are nonetheless justified as incidental to the promotion of a "substantial" or "compelling" governmental interest, unrelated to speech, and unattainable by means less intrusive upon First Amendment rights. (*Buckley* v. *Valeo, supra,* 424 U.S. at pp. 44-45, 47-48 [46 L.Ed.2d at pp. 702-704]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 438, 444 [9 L.Ed.2d 405, 421, 424-425, 83 S.Ct. 328]; *Shelton* v. *Tucker* (1960) 364 U.S. 479, 488-490 [5 L.Ed.2d 231, 237-239, 81 S.Ct. 247].)

The Commission urges that there are two such "compelling" interests, the first of which is the prevention of the fraud and corruption alleged to be associated with the use of "paid" petition circulators. We note that in *Buckley* the high court expressly concluded that the prevention of corruption did not constitute an interest sufficiently substantial to warrant the direct infringement of political communication represented by campaign expenditure limitations. (*Buckley* v. *Valeo, supra,* at p. 45 [46 L.Ed.2d at p. 703].)

Moreover, the Commission advances no persuasive argument that the Legislature cannot deal effectively with corruption in the circulation process by laws more narrowly aimed at specific abuses. Several existing statutes proscribe a wide range of corrupt circulation practices. The Elections Code, for example, prohibits misrepresentation in circulation

of a petition (§ 29214); filing (§ 29215) or circulating (§ 29216) petitions with false signatures; filing false affidavits concerning any petition (§ 29218); forgery of petition signatures (§ 29221); and withholding or obscuring the text or summary of a measure from a potential signatory's view (§§ 29228, 29229).

Secondly, the Commission also contends that the state has a "compelling" interest in assuring that positions on the ballot cannot be bought. Again, however laudable the goal similar considerations were expressly rejected in *Buckley* (424 U.S. at pp. 48-49 [46 L.Ed.2d at pp. 704-705]) and *Citizens* (16 Cal.3d at p. 675.)· ■ The state may indeed be empowered to condition ballot eligibility upon a prior demonstration of voter support. What it may not do is to impose expenditure limitations on the process by which that support is solicited. On the other hand, as the high court noted in *Buckley*, appropriate limitations on individual *contributions* remain a constitutionally valid means of dealing with undue influence by moneyed interests in the electoral process. (*Buckley, supra*, at pp. 23-38 [46 L.Ed.2d at pp. 690-698].)

■ We think it significant that the cases from other jurisdictions cited by the Commission as upholding broad regulation of paid petition circulators (*State* v. *Campbell* (1973) 265 Ore. 82 [506 P.2d 163, 166-170], app. dism. *sub nom. Campbell* v. *Oregon* (1973) 414 U.S. 803 [38 L.Ed.2d 39, 94 S.Ct. 132]; *State* v. *Conifer Enterprises, Inc.* (1973) 82 Wn.2d 94 [508 P.2d 149, 153]) predate *Buckley*. Their authority is therefore suspect to the extent that they conflict with the *Buckley* rationale.

Concluding as we do that no compelling interest has been demonstrated which justifies the limitations imposed by sections 85200-85202, we hold that the sections are unconstitutional as an undue infringement on the rights of political expression guaranteed by the First Amendment to the federal Constitution. As such they are void. We accordingly do not reach petitioner's alternative arguments that these provisions are equally invalid under unrelated provisions of our state Constitution.

■ Petitioners also challenge on state constitutional grounds the provisions contained in Elections Code section 3507, which impose a 150-day limitation on the circulation of petitions. We are advised by respondent Secretary of State that, within the 150-day period allotted to it, the Greyhound Dog Racing Initiative obtained more than 110 percent of the necessary signatures and has, accordingly, qualified for the

November 1976 ballot. The point is arguably moot. ■ However, appellate courts have on numerous occasions exercised their discretion to consider questions technically moot as to the parties where the issues are nonetheless of continuing public importance. (E.g., *Diamond* v. *Bland* (1970) 3 Cal.3d 653, 657 [91 Cal.Rptr. 501, 477 P.2d 733], cert. den. *sub nom. Homart Development Co.* v. *Diamond* (1971) 402 U.S. 988 [29 L.Ed.2d 153, 91 S.Ct. 1661], rehg. den. (1971) 404 U.S. 874 [30 L.Ed.2d 120, 92 S.Ct. 27], rehg. den. (1972) 405 U.S. 981 [31 L.Ed.2d 257, 92 S.Ct. 1189], rehg. den. (1972) 409 U.S. 897 [34 L.Ed.2d 154, 93 S.Ct. 91] [initiative qualification]; *DiGiorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]; *People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467-468 [89 Cal.Rptr. 290].) We do so here.

■ Petitioners suggest that the 150-day limitation expressed in Elections Code section 3507 is inoperative since it is superseded by the constitutional requirement that an initiative measure shall be submitted at the next general election "held at least 131 days after it qualifies . . . ." (Cal. Const., art. IV, § 22, subd. (c).) In petitioners' view, this constitutional language means that an initiative petition may be submitted to the Secretary of State at any time up to 131 days before the election for which qualification is sought. Petitioners, however, overlook another provision of article IV, namely, section 24, subdivision (e), which provides that determination of the means by which a measure may "qualify" is a legislative prerogative.

We perceive no difficulty in harmonizing the relevant provisions. Under Elections Code section 3507, as authorized by article IV, section 24, subdivision (e), of the Constitution, a measure may "qualify" only by submission of supporting petitions, bearing the necessary signatures, within the requisite 150-day solicitation period. Once a measure has "qualified" it must then be presented to the next statewide election held at least 131 days thereafter "or at any special statewide election held prior to that general election." (Cal. Const., art. IV, § 22, subd. (c).) Such an interpretation is consistent with our analysis of a predecessor provision to Elections Code section 3507 in *Gage* v. *Jordan* (1944) 23 Cal.2d 794, 803-804 [147 P.2d 387].

We conclude, accordingly, that the 150-day limitation imposed by section 3507 is not invalid under article IV of the state Constitution.

The alternative writ of mandate and the temporary stay heretofore issued are discharged. Let a peremptory writ of mandate issue, directed to the Secretary of State and the Commission, commanding them to refrain from enforcing sections 85200-85202 of the Government Code, and to perform their election duties without regard to those sections. Since respondent county registrars have indicated a willingness to comply voluntarily with our decision, there appears no need to direct the peremptory writ to them, and accordingly we do not do so. (*Citizens for Jobs & Energy* v. *Fair Political Practices Com., supra,* 16 Cal.3d at p. 675.)

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.