[L.A. No. 31133. Apr. 24, 1980.]

WOODLAND HILLS RESIDENTS ASSOCIATION, INC., et al., Plaintiffs and Appellants, v.
CITY COUNCIL OF THE CITY OF LOS ANGELES et al., Defendants and Appellants;
CALIFORNIA WESTERN CONCEPTS, Real Party in Interest and Respondent.

COUNSEL

Antonio Rossmann and Linda Ogerter for Plaintiffs and Appellants.

Kenneth J. Guido, Jr., Daniel Lowenstein, Andrew Shepard, Peter I. Bersin, Robert M. Brownstein, Robert Snider, Carolyn Sutton, Fadem, Berger & Norton, Michael M. Berger, Carlyle W. Hall, Jr., and Mark A. Posener as Amici Curiae on behalf of Plaintiffs and Appellants.

Burt Pines, City Attorney, Mary D. Nichols and Sally Disco, Chief Assistant City Attorneys, Claude Hilker and Jerome Montgomery, Assistant City Attorneys, and Anthony S. Alperin, Deputy City Attorney, for Defendants and Appellants.

Eric Lauterer, City Attorney (Garden Grove), Rodney R. Atchison, City Attorney (Santa Cruz), Peter D. Bullens, City Attorney (Antioch), Bush, Ackley, Milich & Hallinan, City Attorneys (Escalon, Riverbank and Oakdale), Jerome F. Coleman, City Attorney (Burlingame), Daniel J. Cutrin, City Attorney (Walnut Creek), James L. Darrow, City Attorney (El Centro), Keith Gow, City Attorney (Santa Ana), Donald S.

Greenberg, City Attorney (San Buenaventura), Thomas Haas, City Attorney (Fairfield), William P. Hopkins, City Attorney (Anaheim), Gail Hutton, City Attorney (Huntington Beach), P. Lawrence Klose, City Attorney (Petaluma), Robert J. Logan, City Attorney (San Jose), K. D. Lyders, City Attorney (Oxnard), William C. Marsh, City Attorney (Monterey), Lynn R. McDougal, City Attorney (El Cajon), James A. McKelvey, City Attorney (Fresno), Robert Parkin, City Attorney (Long Beach), Steve A. Slatkow, City Attorney (Seaside), Gerald A. Sperry, City Attorney (Stockton), Elroy F. Wiehl, City Attorney (Escondido), John W. Witt, City Attorney (San Diego), John E. Woodhead, City Attorney (Riverside), Thomas C. Woodruff, City Attorney (Fountain Valley), Lee C. Rosenthal, Joseph Remcho and Rosen, Remcho & Henderson as Amici Curiae on behalf of Defendants and Appellants.

Latham & Watkins, Peter H. Benzian and David Keuser for Real Party in Interest and Respondent.

Cox, Castle & Nicholson, George M. Cox, Carol S. May, John S. Miller, Jr., and John F. Nicholson as Amici Curiae on behalf of Real Party in Interest and Respondent.

Ronald A. Zumbrun, John H. Findley, Turner & Sullivan, James P. Corn, Brown, Winfield & Canzoneri, Thomas F. Winfield III, Louis E. Goebel, Ruth R. Mijuskovic and Luce, Forward, Hamilton & Scripps as Amici Curiae on behalf of Defendants and Appellants and Real Party in Interest and Respondent.

Herbert M. Rosenthal and Gael T. Infande as Amici Curiae.

---

**OPINION**

**CLARK, J.**—Plaintiff associations commenced this mandamus action against the City Council of Los Angeles and certain of its members, challenging approval of a subdivision map for a real estate development by real party in interest.[1]

---

[1]Real party seeks to develop a tract of land in the Santa Monica Mountains within the city. It is claimed extensive grading and fill required to accommodate the proposed

The trial court initially denied the petition but on appeal that judgment was reversed, the Court of Appeal concluding city had erred in approving the subdivision without specifically finding it was consistent with the city's general plan for the area. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825 [118 Cal.Rptr. 856].) The matter was remanded to the trial court with directions to further remand to the city council "for proceedings in the manner required by law, particularly as required by section 11526, subdivision (c), of the Business and Professions Code . . .; and as required by the case of *Topanga Assn. For A Scenic Community* v. *County of Los Angeles*, 11 Cal.3d 506 . . . with respect to making findings."[2] (*Id.*, at pp. 838-839.) Thereafter the trial court issued its peremptory writ mandating the council to set aside the earlier approval, to reconsider the application and to take further action as enjoined by law upon the council and other subordinate agencies.

City prepared an environmental impact report (EIR) and again approved the proposed subdivision. In further proceedings for discharge of the peremptory writ in the trial court, plaintiffs contended the EIR had not been submitted for public discussion and that city had, in the interim, prepared a second EIR relating to an alternate plan of develop-

---

123 homesites included within the proposed subdivision would severely alter the hill configuration in the area.

City is not named a party defendant. References herein to action by the city relate to actions by the city council and subordinate agencies of the council.

[2]The opinion recites that "Although the Legislature has expressly provided (Bus. & Prof. Code, §§ 11526, subd. (c), 11526.2, subd. (c), 11549.5) that the advisory agency, appeal board (planning commission), or governing body (city council) shall not approve a tentative subdivision map unless it first finds that the proposed subdivision is consistent with the applicable general and specific plans, there was no express finding by any of those agencies that the proposed subdivision herein was consistent with the district plan (which was a part of general plan)." (*Id.*, at p. 837.)

The opinion also states: "The petitioners, in addition to raising the issue as to whether the proposed subdivision was consistent with the district plan, raised issues such as to whether the proposed subdivision would cause excess traffic and whether an environmental impact report was required. Failure by the council (and planning commission) to make findings to support its ultimate decision resulted in inability of a reviewing court to bridge the analytic gap between the evidence and the ultimate decision of the council (and planning commission). (See *Topanga Assn. For A Scenic Community* v. *County of Los Angeles*, 11 Cal.3d 506, *supra*.)" (*Id.*, at pp. 837-838.)

The Court of Appeal left open the question of an award of plaintiffs' attorney fees on appeal. A motion for such fees was denied on remand, but on appeal we reversed the order of denial and remanded the matter for reconsideration pursuant to recently enacted Code of Civil Procedure section 1021.5. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 927-938 [154 Cal.Rptr. 503, 593 P.2d 200].) Such issues are not now before us.

ment. The trial court issued a supplemental peremptory writ, commanding city to vacate its later approval of the proposed subdivision, to prepare a draft integrated EIR relating to all reasonably available alternative methods of developing the property—including methods proposed by plaintiffs—and to submit the draft EIR for public discussions prior to preparation of a final report, all in compliance with the California Environmental Quality Act (CEQA). Defendants appeal from the judgment.

Although issuing its supplemental peremptory writ as prayed for by plaintiffs, the trial court rejected certain of plaintiffs' contentions. Plaintiffs appeal, contending (1) that particular council members should have been disqualified from voting on the proposed subdivision because the real party and its agents and representatives had made political contributions to campaign committees controlled by such council members; (2) that certain council members had failed to exercise their discretion on mandated reconsideration of the application; (3) that the city had not followed mandated procedures on reconsideration; (4) that the evidence does not support findings that the proposed subdivision is consistent with the general district plan "including specifically density and minimizing of grading;" and (5) that the evidence does not support council findings that the subdivision, its site, design and improvements are consistent with applicable general and specific plans, are physically suitable for the type of proposed development and density, are not likely to cause substantial environmental damage, and will not conflict with easements for access through or use of the property within the subdivision.[3]

We affirm the judgment.

### Council Members Are Not Disqualified by Reason of Campaign Contributions

 The issue most vigorously argued on appeal is plaintiffs' contention that council members who had received campaign contributions from parties having a financial interest in an application before the council are disqualified from considering and voting on that application. Plaintiffs' contention is based on the fair hearing requirement of Code of Civil Procedure section 1094.5. The trial court found real party, its

---

[3]The matters appealed from by plaintiffs are not incorporated in the judgment, but are conclusions of law based on specific findings of fact by the court.

law and engineering firms, and members of such firms, had "made substantial contributions of money to the campaign committees of [the council's] bare majority [of members voting to approve the proposed subdivision]. The sum of these gifts exceeded $9,000.00. [Real party] and representatives also made contributions of money to the campaign committees controlled by two members of [the council] who absented themselves from the Council's vote on [the subdivision], and two other members who voted against the approval." The trial court concluded that, "The approval by members of [the council] whose campaign committees had received campaign contributions from real party in interest...or its representatives in the court-mandated reconsideration of [the application] did not deny petitioners a fair trial within the meaning of Code of Civil Procedure Section 1094.5 or otherwise invalidate [council's] approval of [the application]. Absent a showing of bribery or conflict of interest, the law does not render it improper for members of [the council] to vote on projects of developers who have given campaign contributions to committees controlled by those members, and the law does not require such council members to disqualify themselves in such circumstances."

Expression of political support by campaign contribution does not prevent a fair hearing before an impartial city council within the meaning of section 1094.5. That section requires that on judicial review of administrative decisions the trial court's inquiry shall extend to "whether there was a fair trial" or "any prejudicial abuse of discretion." Plaintiffs' accusation that receipt of a campaign contribution inevitably results in an appearance of bias or prevents a fair hearing is unwarranted.

Plaintiffs do not contend the contributions were bribes for favorable votes. Nor did all recipients vote in favor of the proposed subdivision. The contributions were lawfully made and received pursuant to laws governing campaign contributions. The Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) provides for disclosure of campaign contributions by recipients of contributions rather than disqualification of recipients from acting in matters in which the contributor is interested. (See Gov. Code, §§ 81002, subd. (a), 84200 et seq.) While the act precludes an elected official from participating in a decision in which he has "a financial interest" (Gov. Code, § 87100),[4] it expressly excludes

---

[4]Section 87100 provides: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to

from definition of "financial interest" the receipt of campaign contributions. (Gov. Code, §§ 87103, subd. (c),[5] 82030, subd. (b).[6]) Thus, the Political Reform Act—dealing comprehensively with problems of campaign contribution and conflict of interest—does not prevent a city council member from acting upon a matter involving the contributor.[7]

■ Political contribution involves an exercise of fundamental freedom protected by the First Amendment to the United States Constitution and article I, section 2 of the California Constitution. (*Buckley* v. *Valeo* (1975) 424 U.S. 1, 14-15, 22 [46 L.Ed.2d 659, 684-685, 689, 96 S.Ct. 612]; *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 377 [134 Cal.Rptr. 201, 556 P.2d 301]; *Citizens for Jobs & Energy* v. *Fair Political Practices Com.* (1976) 16 Cal.3d 671, 674-675 [129 Cal.Rptr. 106, 547 P.2d 1386].) To disqualify a city council member from acting on a development proposal because the developer had made a campaign contribution to that member would threaten constitutionally protected political speech and associational freedoms.

Governmental restraint on political activity must be strictly scrutinized and justified only by compelling state interest. (*Buckley* v. *Valeo, supra*, 424 U.S. 1, 25 [46 L.Ed.2d 659, 691].) ■ While disqualifying contribution recipients from voting would not prohibit contributions,

---

influence a governmental decision in which he knows or has reason to know he has a financial interest."

[5]Section 87103, subdivision (c), provides: "An official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on . . . (c) any source of income, other than loans by a commercial lending institution in the regular course of business, aggregating two hundred fifty dollars ($250) or more in value received by or promised to the public official within twelve months prior to the time when the decision is made; . . ."

[6]Section 82030, subdivision (b), provides: "'Income' also does not include: (1) campaign contributions required to be reported under Chapter 4 of this title."

[7]The Political Reform Act is also concerned with a public official's involvement in decision-making in which he may have a financial interest. Government Code section 87100 provides that a public official "at any level of state or local government" shall not "make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest." However, section 87101 provides in pertinent part: "Section 87100 does not prevent any public official from making or participating in the making of a governmental decision to the extent his participation is legally required for the action or decision to be made." Before land can be put to a particular use an application is "legally required" to be approved by a city's legislative body (i.e., the city council)—either directly in response to the application or on appeal from the decision of a subordinate agency. (Gov. Code, §§ 66452.1, 66452.2, 66452.5; see also Los Angeles Mun. Code, § 17.06.)

it would curtail contributors' constitutional rights. Representative government would be thwarted by depriving certain classes of voters (i.e., developers, builders, engineers, and attorneys who are related in some fashion to developers) of the constitutional right to participate in the electoral process.

Public policy strongly encourages the giving and receiving of campaign contributions. Such contributions do not automatically create an appearance of unfairness. Adequate protection against corruption and bias is afforded through the Political Reform Act and criminal sanctions. (Pen. Code, § 165;[8] see also Pen. Code, § 67 et seq.)[9]

■ Plaintiffs further complain because city did not on remand follow normal procedures for approval of a proposed subdivision. This would have required approval first by subordinate agencies followed by appeals eventually to the city council. However, we do not now consider procedures to be followed upon initiation of an application for approval of a proposed subdivision. The procedures to be followed in this case were dictated, first, by the Court of Appeal in remanding the cause to the trial court (see fn. 2, *ante*), and then by the trial court in its peremptory writ.[10] The writ expressly affords to city an election either to

---

[8]Section 165 provides in pertinent part: "Every person who gives or offers a bribe to any member of any common council, board of supervisors, or board of trustees of any county, city and county, city, or public corporation, with intent to corruptly influence such member in his action on any matter or subject pending before, or which is afterward to be considered by, the body of which he is a member, and every member of any of the bodies mentioned in this section who receives, or offers or agrees to receive any bribe upon any understanding that his official vote, opinion, judgment, or action shall be influenced thereby, or shall be given in any particular manner or upon any particular side of any question or matter, upon which he may be required to act in his official capacity, is punishable by imprisonment in the state prison. . . ."

[9]Plaintiffs' contention might well be self-defeating should they prevail. If a political contribution automatically disqualifies the recipient after his election from considering and acting on matters in which the contributor has an interest, the enterprising developer could disqualify all known environmentalists who are running for municipal office by making nominal contributions to the campaign committees of such persons. Future applications of the developer could then be judged by a panel from which all known environmentalists have been disqualified.

[10]The writ provides in part as follows: "We command you immediately upon receipt of this writ to set aside your decisions approving Tentative Tract 28569 (which proceedings are hereby remanded to respondent City Council which may in its discretion further remand these proceedings, if necessary, to respondents Planning Commission and Advisory Agency), and to reconsider your actions in light of this Court's findings of fact and conclusions of law, and to take any further action specially enjoined upon you by law; but nothing in this Writ shall limit or control in any way the discretion legally vested in you."

start the approval process anew, or merely to reconsider the application at the city council level. When the alternative language first appeared in the proposed judgment following remand, plaintiffs challenged it and sought clear direction that the approval process be commenced anew. Their challenge failed in the trial court and they did not seek review of the form of judgment. The city council, in compliance with the writ, elected to reconsider the application without referring the matter to subordinate agencies. It thus appears city has complied with the direction of the writ insofar as it was required to remand the cause to subordinate agencies, and plaintiffs are now precluded by law of the case from challenging city's election.

## OTHER CONTENTIONS URGED BY PLAINTIFFS ON APPEAL NEED NOT BE CONSIDERED

■ Because we conclude for reasons discussed below that the trial court properly vacated the city's order approving the subdivision, we need not address certain of plaintiffs' additional challenges to the approval. Such challenges are embodied in plaintiffs' objections to trial court findings with respect to compliance with mandated procedures and the compatibility of the subdivision and various requirements of the governing general plan. As hereinafter appears, a new EIR will necessarily be prepared on remand and the city will be required to consider again approval of the plan if resubmitted. Issues of noncompliance in procedures leading to the now-vacated order of approval are moot.

## DEFENDANTS' APPEAL IS NOT MOOT

■ A preliminary issue is presented before considering defendants' substantive contentions on appeal. Plaintiffs urge defendants' appeal is moot because the city has, since this appeal, caused a new EIR to be prepared in accordance with the supplemental writ. There have not been, so far as we are aware, proceedings in the city council on the new EIR nor, of course, determination by the trial court that defendants have in fact complied with the supplemental writ. Clearly, the question whether the city has complied with CEQA procedures is not moot, and requires our review for a proper disposition of this appeal.

## DEFENDANTS' APPEAL IS WITHOUT MERIT

The net effect of the judgment is that the city—in approving the subdivision—failed to follow proper procedures, and that it must vacate its

approval and reconsider the application. The trial court grounded its judgment on conclusions of law, first, that defendants had failed to consult with plaintiffs "early in the preparation of the draft EIR, as required by the California Administrative Code, title 14, section 15085(b), and the City of Los Angeles CEQA Guidelines...."

The trial court further found that defendants had prepared two EIRs, one for the proposed 123-unit development, and a later one for a 73-unit development. The court concluded that defendants had "thereby failed to prepare a single integrated EIR on those developments as required by California Administrative Code, title 14, section 15061(f)," and that the council had accordingly been precluded from "fully, fairly and openly determining whether there are feasible alternatives to [the proposed subdivision] and whether specific economic, social or other considerations make infeasible such alternatives."

■ As to the trial court's determination of defendants' failure to consult with plaintiffs during early preparation of the draft EIR, defendants contend informal communications between plaintiffs and the city agency preparing the EIR on the 123-unit development, in combination with public hearings on the draft EIR after its preparation, satisfies requirements of law. Defendants' contention is basically a factual challenge to court findings on the issue in dispute. As to such issues the court found the proposed final EIR recited that during preparation of the draft city agencies were in "regular communication" with plaintiffs' representatives and "on numerous occasions" discussed the proposed project and draft EIR, that plaintiffs' representatives had access to the EIR file and were sent copies of the draft EIR "approximately one month prior to commencement of the formal circulation period," and that the "items of environmental concern" to plaintiffs were documented and known to the concerned city agency "and were addressed in such draft."

The trial court nevertheless further found defendants had failed "to seek the citizens' comments in time to influence the preparation and content of the draft EIR," that although city was aware of plaintiffs' opposition, it failed prior to publication of the draft EIR "to solicit the citizens' specific environmental comments or objections for use in preparation of" the draft EIR, and that citizens—not the city—"initiated the contacts with the planning staff prior to publication of the draft EIR."

■ It must be apparent that in serving the policy of CEQA it is necessary to secure all conflicting views prior to preparation of even a draft EIR. Once a draft has been prepared by persons who have not had full opportunity to be apprised of all conflicting views, it becomes more difficult for those persons to accept at full value new views necessarily critical of the draft. Such contrary views cannot be weighed with the same objective balance had they been considered at the time of initial presentation. Moreover, in the interest of more efficient administration of CEQA—and inefficient administration of the act could impose intolerable burdens—all related views whether in favor of or against a specific proposal should be openly and timely solicited by or on behalf of those charged with preparation of the draft. ■ Because evidence in the instant case is conflicting there is substantial support for the trial court's conclusion that plaintiffs were not afforded a fair opportunity to express their views at a time sufficiently early to receive even-handed consideration on the draft and revised EIRs.

■ As to the trial court's conclusion city had failed to prepare an integrated EIR for the project, city contends it is required to prepare but one report for each "project," and that real party's alternative proposals are for separate projects. An analysis of the environmental change resulting from a proposed development is incomplete unless the proposed alternative developments are also considered and reported. The "project" constitutes the entire tract of land proposed for development by the applicant. Real party proposes only alternative developments—whether for 123 or 73 building sites—of the same project. City must consider such alternatives in a single report.

The judgment is affirmed. All parties shall bear their own costs on appeal.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I concur in the judgment, but I cannot join the majority's sweeping language and conclusions.

Although I am sympathetic with the attempts of plaintiffs to ensure governmental decision making which is free from bias, this court is not well equipped to hammer out the proper standards for disqualification based solely on the receipt of lawful campaign contributions. Surely the amount of the contribution, its timing, its method, as well as the signifi-

cance of the issue being considered, would be relevant in judging the appearance of bias. While the specter of a decision maker having received large campaign contributions from one of the parties in the adjudication process is troubling and a worthy subject for scrutiny (cf. *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 518 [113 Cal.Rptr. 836, 522 P.2d 12]), a legislative body is better equipped to initially address this problem. It can more easily determine whether existing requirements governing disclosure of conflict of interest are sufficient to ensure fair hearings before city councils. (Cf. *First National Bank of Boston* v. *Bellotti* (1978) 435 U.S. 765, 789 [55 L.Ed.2d 707, 725-726, 98 S.Ct. 1407].)

Accordingly, it is not the place of this court to declare, as does the majority, that "[a]dequate protection against corruption and bias is afforded through the Political Reform Act and criminal sanctions." (Maj. opn., *ante*, p. 947.) Whether or not this is true is a matter for the Legislature to determine.

The presence of an unbiased tribunal has long been regarded as an essential component of due process of law. (*In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623]; *Peters* v. *Kiff* (1972) 407 U.S. 493, 501-502 [33 L.Ed.2d 83, 93-94, 92 S.Ct. 2163].) It is essential if our political and jurisprudential systems are to function. Indeed, little value would attach to other procedural protections if the decision makers were biased.

Sensitive to the importance that fairness plays in our political and legal processes, the courts have repeatedly held that furtherance of these objectives justifies infringing on the very "fundamental rights" at issue in this case. (E.g., *Buckley* v. *Valeo* (1976) 424 U.S. 1, 26-29 [46 L.Ed.2d 659, 691-694, 96 S.Ct. 612] [upholding recordkeeping, reporting and disclosure requirements, as well as a limitation on campaign contributions]; *Hays* v. *Wood* (1979) 25 Cal.3d 772, 780, 782-783 [160 Cal.Rptr. 102, 603 P.2d 19] [upholding disclosure requirements]; *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 46-48 [157 Cal.Rptr. 855, 599 P.2d 46] [upholding registration and reporting requirements]; *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345] [upholding a conflict of interest law and disclosure requirements]; *Morial* v. *Judiciary Com'n. of State of La.* (5th Cir. 1977) 565 F.2d 295, cert. den. 435 U.S. 1013 [56 L.Ed.2d 395, 98 S.Ct. 1887] [upholding statute and canon of judicial

ethics requiring a judge to resign from the bench when running for an elective, nonjudicial office]. Cf. *Hardie* v. *Eu* (1976) 18 Cal.3d 371, 378 [134 Cal.Rptr. 201, 556 P.2d 301].) The majority's assertion to the contrary is simply wrong.

The majority correctly note that a campaign contribution does not constitute a "financial interest" which could precipitate the official's disqualification under the Political Reform Act of 1974. (Maj. opn., *ante*, p. 945.) Therefore, the act is not available as a basis for precluding the defendant council members from participating in the underlying proceeding. However, the majority proceed to suggest that even if there were a conflict of interest, the participation of the council members would be permitted. (Maj. opn., *ante*, fn. 7.) This unnecessary observation is not only gratuitous but erroneous as well.

Government Code section 87101 provides that an official otherwise disqualified from participating in a decision under Government Code section 87100 may act if *"his participation* is legally required...." (Italics added.) While the city council may be required to act in the present case—a conclusion which is disputed by plaintiffs and which the court need not decide—the disqualification of a particular member would not preclude the council from acting.[1] In light of the general objective of the act to avoid having officials participate in decisions affecting their financial interests (Gov. Code, §§ 81001, subd. (b), 87100), it would appear more reasonable to construe section 87101 to permit participation only where a governmental decision requires the *individual's* participation.[2] Such a construction is consistent with regulations promulgated by the Fair Political Practices Commission mandating a narrow construction for the exception in Section 87101. (Cal. Admin. Code, tit. 2, § 18701, subd. (c).)

**NEWMAN, J.**—I concur in the result. I share the Chief Justice's concern regarding the majority's pronouncement that "[a]dequate protection against corruption and bias is afforded..." (maj. opn., *ante*, p. 947). I also agree with her view regarding the interpretation of Government Code section 87101 (*ante*, this page, above).

---

[1] In fact, two members of the council did not participate in the challenged vote. There is no suggestion that the council's action was defective for that reason.

[2] This construction is also consistent with the second sentence of section 87101, which provides that "[t]he fact that an official's vote is needed to break a tie does not make his participation legally required for purposes of this section." Again, the emphasis is on the status of the individual official, not the body of which he or she is a member.

Regarding the difficulties that confront legislators and judges who in the future will struggle with the problem of campaign contributions to adjudicators see, e.g., *The Robed Politician* (Mar. 1979) 2 L.A. Law. pages 10, 30; cf. my dissents in *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33, 50-54 [157 Cal.Rptr. 855, 599 P.2d 46], and *Hays* v. *Wood* (1979), *id.*, 772, 801-802 [160 Cal.Rptr. 102, 603 P.2d 19]. Money has been called "the mother's milk of politics". Campaign contributions, unfortunately, seem likely to become the mother's milk of nonpolitical as well as political elections.

**TOBRINER, J.**—I join in the majority opinion upon my understanding that nothing in that opinion is intended to preclude the Legislature or a local governmental entity from enacting appropriately defined legislation providing for the disqualification of a decisionmaker in a quasi-judicial proceeding on the basis of the decisionmaker's receipt of campaign contributions from a party to the proceeding. We have no such disqualifying legislation in the present case. Thus the majority correctly holds that in the absence of such provision the fact that a decisionmaker has received a campaign contribution does not automatically demonstrate bias or the appearance of bias. The receipt of such a contribution does not preclude the decisionmaker's participation in the proceeding under the "fair hearing" principles of Code of Civil Procedure section 1094.5 or of the due process sections of the state or federal Constitutions.