**Robin K.A. FICKER, Plaintiff,**

v.

**MONTGOMERY COUNTY BOARD OF ELECTIONS, et al., Defendants.**

**Civ. A. No. R–85–4365.**

United States District Court,
D. Maryland.

Dec. 23, 1985.

Perry M. Rosen, Stuart M. Goldberg, Washington, D.C., for plaintiff.

Diana G. Motz, Asst. Atty. Gen., Baltimore, Md., for defendants.

we believe it far to close to trial for us to exercise our discretion in that regard.

9. It is regrettable that we only had the opportunity to clarify the law in this area on the eve of the trial. However, as in *Ohl,* neither party addressed the issue to the Court until the last minute.

10. Justin moves in limine to bar hearsay testimony. Because such testimony is offered by Guardian not for the truth of the matter asserted therein, but to establish Guardian's state of mind in relation to discovering legitimate reasons to deny Justin's claim, it may be admissable for that purpose. Of course, we will give a cautionary instruction to the jury.

## OPINION

RAMSEY, District Judge.

Plaintiff Robin Ficker filed this action for injunctive and declaratory relief challenging the constitutionality of Md.Elec. Code Ann. Art. 33, § 23–5(4) under the First and Fourteenth Amendments of the United States Constitution.[1] There has been extensive briefing of the issues by counsel for both parties and the Court has heard testimony and oral argument from plaintiff and defendants. Since the facts are virtually uncontested and the issue is almost wholly an issue of law the Court will not make separate findings of fact, but will incorporate them in this Opinion. *See* Fed.R.Civ.P. 52(a).

There is no dispute as to the essential facts. Plaintiff Ficker sponsored an initiative on the Montgomery County ballot in the November 6, 1984 election seeking to establish a single-member district election plan in place of the current at-large system used to elect councilmen. In Maryland, a local charter may be amended through the process of initiative if the sponsor submits to the county election board a petition containing the signatures of 10,000 registered voters of that county. Md. Const., Art. XI–A.[2] Plaintiff paid out $2,637.30 to twelve campaign workers who aided plaintiff in securing the signatures necessary to place the initiative on the ballot. On November 6, 1984, plaintiff's initiative was defeated by the voters of Montgomery County. Plaintiff thereafter reported to the press that he would likely make an attempt to place the initiative on the November, 1986 ballot. In later November or early December, 1984, plaintiff was contacted by the Maryland State Special Prosecutor's Office and informed that his actions in putting the initiative on the ballot by paying people to obtain signatures was illegal and that if he continued to pay people to obtain signatures on initiative petitions he would be prosecuted under Md.Elec. Code Ann., Art. 33, § 23–5(4) (hereinafter "§ 23–5(4)").[3] Section 23–5(4) prohibits the payment of money or other inducements to any individual for securing signatures on a petition to place an initiative or referendum on a county or state ballot. Plaintiff contends that § 23–5(4)'s prohibition against paying petition circulators unduly restrains his rights under the First Amendment to speak out and encourage debate on political issues. In order to determine whether § 23–5(4) violates plaintiff's First Amendment rights, the Court must first determine whether it restricts speech. If it does, the Court must determine whether the restraints imposed are nonetheless justified as incidental to the promotion of a "substantial" or "compelling" governmental interest.

In order to qualify an initiative for ballot, the sponsor must attain 10,000 valid signatures from voters registered in the County. *See* Md. Const., Art. XI–A. It follows that the process of solicitation of these signatures involves discussion of the merits of the measure.[4] *See Libertarian*

---

1. After a hearing held in open court on November 27, 1985, the Court denied plaintiff's request for a preliminary injunction and scheduled a hearing on plaintiff's motion for declaratory relief on December 11, 1985.

2. Initiative is the mechanism provided in Maryland to enable voters to create and pass their own laws. Md. Const. Art. XI–A. Referendum is the process by which voters may approve or reject laws passed by the State legislature. Md. Const. Art. XVI. Plaintiff has only challenged the constitutionality of limitations on the payment of money to petition circulators for initiative measures. Accordingly, the Court limits its review of the constitutionality of Md.Elec.Code Ann., Art. 33, § 23–5(4) as applied to ballot measures brought by initiative only.

3. Md.Elec.Code Ann., Art. 33, § 23–5(4) provides

   As to any petition (including an associated or related set of petitions) under the provisions of Articles XI–A and XVI of the Constitution of Maryland, it is unlawful for any person:

   \* \* \* \* \* \*

   (4) To give, pay, or receive any money or other valuable consideration or inducement for signing the petition or for securing the signatures thereon.

4. Before sending the petition circulators out to gather signatures, plaintiff Ficker meets with each circulator and discusses the substance and merits of the initiative measure. Plaintiff also explains how to describe the merits of the issue to potential petition signers and provides an-

*Party of Oregon v. Paulus,* Civ. No. 82–521 FR, Slip Op. at 4 (D.Ore. Sept. 3, 1982); *Hardie v. Fong Eu,* 18 Cal.3d 371, 556 P.2d 301, 303, 134 Cal.Rptr. 201, 203 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 360 (1977). Consequently, the petition circulators themselves become the principal means of advocacy for the proposed initiative. *Accord Hardie v. Fong Eu,* 134 Cal.Rptr. at 203, 556 P.2d at 303.

The evidence indicates and the Court finds that plaintiff would be unable to place initiatives on county ballots without the aid of petition circulators.[5] The record also establishes that the available pool of petition circulators will be less if plaintiff is prevented from compensating them for their work.[6] "A restriction on the amount of money a person or group can spend on a political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Buckley v. Valeo,* 424 U.S. 1, 19, 96 S.Ct. 612, 634, 46 L.Ed.2d 659 (1976). The Court can not assume that any proposal capable of generating genuine voter support will attract at the outset sufficient volunteer support to do the job. *See Hardie v. Fong Eu,* 134 Cal.Rptr. at 204, 556 P.2d at 304. The simple fact is that people must earn a living and only a limited number of individuals can afford to devote the substantial amounts of time necessary to collect signatures on purely a volunteer basis. *See Grant v. Meyer,* 741 F.2d 1210, 1219 (10th Cir.1984) (Halloway J. dissenting). Thus § 23–5(4) which prohibits payment of petition circulators impedes the sponsor's opportunity to advance his political views with members of the public by circulating petitions; it curtails the discussion of issues that normally accompanies the circulation of petitions; and it restricts the size of the audience that can be reached. *See Grant v. Meyer,* 741 F.2d at 1219 (Holloway J. dissent); *Libertarian Party of Oregon v. Paulus,* Slip Op. at 4. In short, the statute infringes on plaintiff's right to political speech guaranteed by the First Amendment.

■ Having determined that the statute imposes a restraint on speech, the Court must next determine whether the restraints imposed are justified in furthering a compelling state interest. Defendants argue that the statute is necessary to maintain the initiative process as a legitimate alternative to legislative action by elected representatives. Defendants are afraid that if sponsors could pay money to have parties solicit signatures, the process of initiative would become a tool for corporations, special interest groups, and political machines. However, in *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), the Supreme Court held that a state could not prohibit corporations from making contributions or expenditures advocating their views on ballot measures. This holding was later followed in *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkley, California,* 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), where the Court struck down a city ordinance which limited the ability of special interest groups to make contributions in favor of committees formed to support or oppose certain ballot measures. Accordingly, the State's interest in preventing corporations and special interest groups from using initiatives as a conduit for advocating their views does not constitute a sufficiently substantial interest to warrant the direct infringement on political communications.

swers to various questions the voters were likely to ask. (Ficker Affidavit at para. 10, 17). Plaintiff also describes the legal requirements for obtaining valid signatures as described under Maryland election law. Finally plaintiff gives each circulator his home and office phone number so that voters with unanswered questions could contact him personally if necessary.

**5.** Prior initiative efforts by the plaintiff had utilized compensated petition circulars, since the

provision forbiding compensation of solicitors for Art. XI–A initiative measures found its way into the Election Code by an amendment adopted by the General Assembly in 1982. Ch. 851 of the Acts of the Maryland General Assembly (1982) (effective January 1, 1983).

**6.** Ficker Affidavit at para. 6, 8. The Affidavit of the plaintiff was also the subject of testimony under oath at the hearing on the merits of the case.

■ Defendants also contend that the statute is necessary to insure broad based or authentic popular support for the initiative, and not just the support of corporations, special interest groups, or political machines. It seems clear that by permitting a sponsor to pay solicitors to go out into the community to gather signatures and to communicate the position of the sponsor to the public a broader base of public support or opposition will necessarily be developed. The record indicates that volunteers alone are insufficient to rally sufficient popular support to qualify an initiative for the ballot.[7] The Court does not contest the power of the state to condition ballot eligibility upon a prior demonstration of public support. Accordingly, the state may set a higher number of registrant signatures to qualify an initiative for ballot should the state deem it necessary to assure broad based voter support. However, the Court does not accept the State's contention that it may impose expenditure limitations on the process by which that support is solicited. *Accord Hardie v. Fong Eu,* 134 Cal.Rptr. at 204, 556 P.2d at 304. A limitation on expenditures for political communications during a campaign imposes direct and substantial restraints on the quantity of political speech. *See Buckley,* 424 U.S. at 39, 96 S.Ct. at 644. The Court finds that the State has not demonstrated a compelling interest to be served by barring expenditures for the solicitation of ballot signatures and accordingly holds that § 23–5(4)'s limitation on expenditure for petition solicitors in initiative measures is an undue infringement on the rights of political expression and to that extent is void.

Counsel for the plaintiff will, within fifteen days from the date hereof, submit an appropriate Order to carry out the findings of this Memorandum Opinion.

---

**7.** Ficker Affidavit at para. 6; supported by testimony at the trial on the merits. The Court so finds.