[No. A028122. First Dist., Div. Five. Nov. 15, 1985.]

W. BRUCE SHAFER, as Assessor, etc., et al.,
Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant;
ARCADIA DEVELOPMENT COMPANY et al.,
Interveners and Appellants.

**424**

**COUNSEL**

Douglas J. Maloney, County Counsel, and Patrick K. Faulkner, Deputy County Counsel, for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Appellant.

Paul W. Baker and Ehrman, Flavin, DeVine & Baker for Interveners and Appellants.

**OPINION**

**LOW, P. J.**—Pursuant to Revenue and Taxation Code section 538, 51 county tax assessors[1] challenge sections of chapter 3.5, part 0.5 of division 1 of the Revenue and Taxation Code[2] enacted in 1983. (Added by Stats. 1983, ch. 498, § 133, p. 2146, eff. July 28, 1983.) We conclude that the supplemental assessment provision in sections 75.10 and 75.11 and the delayed supplemental assessments on newly constructed property held for sale provided in section 75.12 are valid; the exclusion of fixtures from supplemental assessment contained in former section 75.5 and effective for the year 1983 only is also valid.

I

██ Plaintiffs contend that the supplemental assessment provision of chapter 3.5 (§§ 75.10, 75.11) imposes new ad valorem taxes in violation of California Constitution, article XIII A, sections 3 and 4. We agree with the trial court that "the measure does no more than affect the time at which the existing real property tax is calculated and imposed, implementing the major revisions effected by Article XIIIa [*sic*]."

California Constitution, article XIII A limits ad valorem taxes on real property to 1 percent of value (except to the indebtedness previously approved by the voters) and prohibits imposition of additional taxes on local property unless approved by two-thirds of the voters. It established 1975-1976 values as the base for property tax purposes, unless the property is purchased, newly constructed or had changed ownership after the 1975 as-

---

[1]See appendix for complete list of parties to this case.

[2]Hereafter, all statutory references are to the Revenue and Taxation Code unless otherwise indicated.

sessment. Article XIII A of the California Constitution also established a maximum inflation factor of 2 percent. (See generally, *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 220 [149 Cal.Rptr. 239, 583 P.2d 1281].) While California Constitution, article XIII A changed the *rate* of locally assessed property taxes from (a) assessment based on current value to (b) assessment based on acquisition value, article XIII A did not amend existing *methods* of assessment. Property was assessed under the new tax rates as of the existing lien date of March 1. (§ 2192.)

Prior to the enactment of chapter 3.5, property assessed on or before the March 1 lien date would be taxed for the immediately following fiscal year, beginning July 1. However, if an adjustment of taxes resulted from revaluation due to changes in ownership or completion of new construction *after* March 1, any increased taxes on the property would not be levied until the next succeeding fiscal year. For example, property sold on February 28, 1985, would be assessed according to its appraised value on March 1, 1985, for levy in the fiscal year 1985-1986. But property sold on March 2, 1985, would not be reappraised until March 1, 1986, for levy of tax the subsequent fiscal year, 1986-1987.

The enactment of chapter 3.5 eliminated the delay between the change in valuation and reassessment. The preamble to chapter 3.5 states: "It is the intent of the Legislature in enacting this chapter to fully implement Article XIII A of the California Constitution and to promote increased equity among taxpayers by enrolling and making adjustments of taxes resulting from changes in assessed value due to changes in ownership and completion of new construction at the time they occur. The Legislature finds and declares that under the law in effect prior to the enactment of this chapter, recognition of these increases is delayed from four to sixteen months, which results in an unwarranted reduction of taxes for some taxpayers with a proportionate and inequitable shift of the tax burden to other taxpayers." (§ 75.)

Under chapter 3.5, if after the March 1 lien date there are increases in assessed value due to changes in ownership or completion of new construction, the property is reassessed during the current fiscal year rather than waiting for the next year. The effect is to more equitably levy local property tax by eliminating the delay in the adjustment of property values.

A

Plaintiffs argue that the provision creates new taxes where none previously existed. We disagree. The supplemental assessment provision imposes

a new *timing mechanism* for valuation and collection. It does not alter the tax rate or impose new taxes. Nor is property taxed which was not taxed in the past. Rather, property owners are simply paying taxes based on the value closer to the time of a change in ownership or the completion of new construction.

The Legislature has great latitude to impose and regulate the collection of taxes, except when expressly prohibited by the Constitution. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at pp. 233-234; *Haman* v. *County of Humboldt* (1973) 8 Cal.3d 922, 925 [106 Cal.Rptr. 617, 506 P.2d 993].) Taxes on the supplemental roll become a lien against the real property on the date of the change in ownership or completion of new construction. (§ 75.54.) Thus, these taxes accrue at the time of the events triggering reassessment. "The subsequent assessment and levy are necessary in order to fix the amount of the tax due, but they do not result in the creation of a new obligation; they simply are administrative steps necessary to the enforcement of the right which accrued on the lien date." (*California Computer Products, Inc.* v. *County of Orange* (1980) 107 Cal.App.3d 731, 736-737 [166 Cal.Rptr. 68].)

The express purpose behind chapter 3.5 is to equalize the tax burden among taxpayers. The approach provided in sections 75.10 and 75.11 is in full conformity with the purpose behind California Constitution, article XIII A; i.e., to value the property at full cash value as reflected by new construction or a change in ownership. (Cal. Const., art. XIII A, § 2.)

There is nothing unconstitutional about modifying the lien date. (*Sea-Land Service, Inc.* v. *County of Alameda* (1974) 12 Cal.3d 772, 780 [117 Cal.Rptr. 448, 528 P.2d 56].) Chapter 3.5's approach of timing assessments to coincide with the *acquisition or completion date* is consistent with the purpose behind article XIII A of the California Constitution. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at pp. 235-237.)

B

The property affected by chapter 3.5 is locally assessed property and is not state-assessed property, such as public utilities. (See Ballot Pamp., Tax Limitation—Initiative Constitutional Amendment, Primary Elec. (June 6, 1978) p. 56.) This is further reason why article XIII A, section 3 of the California Constitution does not apply.

The imposition of the 2 percent inflation factor is also proper. Section 75.18 provides that if the actual date of the most recent change in

ownership or the completion of new construction entered on the supplemental roll occurs between March 1 and June 30, the new base year value shall be adjusted on the following March 1 by the inflation factor which is not to exceed 2 percent. The inflation factor would not be imposed until the next fiscal year after the property has been reassessed. This provision implements California Constitution, article XIII A, section 2, subdivision (b), which limits the year-to-year cost-of-living increase to 2 percent of the base year value. (§ 2212.) As such, this is not an ad valorem tax increase.

## II

## A

■ Both the State Board of Equalization and intervener property developers appeal from that part of the judgment which held that section 75.12 violates California Constitution, article XIII, section 1. The Constitution requires all property subject to taxation to be assessed at the same percentage of fair market value; i.e., there must be uniformity of assessment. (See *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946 [106 Cal.Rptr. 643, 502 P.2d 1019]; *California Computer Products, Inc.* v. *County of Orange, supra,* 107 Cal.App.3d at pp. 740-741.) Section 75.12 delays the supplemental assessment of newly constructed property held for sale until it changes ownership or is rented, leased or otherwise used by the owner.

Plaintiffs/assessors argue that section 75.12 impermissibly creates a partial temporary exemption from supplemental taxation for completed new construction held for sale in violation of article XIII, section 1 of the California Constitution. The trial court found the section "imposes a lesser effective tax rate on real property not available for use than upon property which is available for use [in violation of] Article XIII section 1." It reasoned that article XIII, section 1 requires uniformity of taxation of properties and that the Legislature is without authority to create a distinction between properties held for sale and those which are not. We disagree.

Under section 75.12, new construction which is held for sale or other change of possession is not added to the supplemental roll until that property changes ownership or becomes occupied by the owner or through rental or lease. The parties stipulated that "[t]he regular local assessment roll (as prepared under existing law) is not affected by the provisions of section 75.12, in that all new construction completed or partially completed will be enrolled on the regular assessment roll as of the regular March 1 lien date." Without this provision, the property would be reassessed and the added tax levied on the builder upon the completion of the construction, and again

reassessed at the time the change of ownership occurred. With this provision, the builders are not subject to any supplemental assessment imposed upon completion of the property if it is not sold prior to March 1 of the following year. Thus, the unsold homes do not escape assessment as plaintiffs contend; the builders receive only a temporary delay from the levy of the supplemental assessment. Under this provision, newly constructed property held for sale may generate at least as much tax revenue as it would have prior to the enactment. For example, under section 75.12, a house completed on March 30, 1984, and sold on September 1, 1984, would be enrolled, and its value assessed in its partially completed form on the March 1, 1984, lien date. At the time the house is sold in September 1984, it will undergo a supplemental assessment; that amount being the difference between the value of the new construction as sold and the amount previously assessed. Thus, taxes based upon the full cash value of the house will be levied during the current fiscal year. Without section 75.12, the partially completed house would be assessed as of March 1, 1984, but any increase in valuation upon completion might not be levied until the next succeeding fiscal year, 1985-1986. Any supplemental tax assessed prior to the next lien date is paid by the home buyer at the supplemental assessment nearest to the time of sale. The effect of this provision is to shift the tax burden from the builders to the home buyers. Builders are relieved from a supplemental assessment on their inventory because of the *timing* of the sale. Nothing in California Constitution, article XIII, section 1 prevents the Legislature from making this change. The Legislature may permissibly distinguish or defer assessment in favor of a particular class to promote a legitimate state interest. (See *Haman* v. *County of Humboldt, supra,* 8 Cal.3d at p. 925.)

In striking down section 75.12 as unconstitutional, the court relied on *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14 [127 Cal.Rptr. 154, 544 P.2d 1354], and *Michael Todd Co.* v. *County of Los Angeles* (1962) 57 Cal.2d 684 [21 Cal.Rptr. 604, 371 P.2d 340]. Unlike the cases relied upon here, the unsold property held in inventory is not exempt from taxation nor is it taxed at a rate different from other residential real estate. The supplemental tax assessment and levy is merely *deferred* until the actual sale. When it is sold, the full cash value of the property is taxed at the same rate as other residential property.

Plaintiffs' concern that indefinitely delaying the assessment would result in a complete escape from taxation is not founded. As amended in 1984, section 75.12 provides: "(d) Nothing in this section shall preclude the reassessment of any such property on the assessment roll for March 1 following the date of completion." (Added by Stats. 1984, ch. 946, § 5, eff. Sept. 10, 1984.) Thus, any unsold properties will be reassessed and taxes levied as of the next lien date.

B

 In its cross-appeal, the State Board of Equalization challenges plaintiffs' claim that section 75.12 violates the equal protection clauses of the federal and state Constitutions. The trial court did not address this issue because it found that section 75.12 was invalid under article XIII, section 1 of the California Constitution. Because of the public importance of this matter, we deem the issue to be a proper subject of appellate review. (*Hardie* v. *Eu* (1976) 18 Cal.3d 371, 379 [134 Cal.Rptr. 201, 556 P.2d 301].)

Plaintiffs claim that section 75.12 violates equal protection because it "allows identical pieces of property to be taxed at disparate rates solely on the basis of the owner's expressed future intention." We disagree. " 'We have long held that "[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." [Citation.] A state tax law is not arbitrary although it "discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy," not in conflict with the Federal Constitution. [Citation.] This principle has weathered nearly a century of Supreme Court adjudication . . . .' [Citation.]" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at pp. 233-234; see also *Haman* v. *County of Humboldt, supra,* 8 Cal.3d at pp. 925-926.)

Tax schemes which favor a particular class may be justified on the basis of administrative convenience and in furtherance of legitimate state interests. (*Haman* v. *County of Humboldt, supra,* 8 Cal.3d at pp. 925-926; *Estate of Morrison* (1982) 130 Cal.App.3d 543, 546-547 [181 Cal.Rptr. 834].) "Legislative judgment as to the adequacy of a distinction to justify a classification for tax purposes will not be set aside on equal protection grounds unless it is palpably arbitrary. [Citation.]" (130 Cal.App.3d at p. 546.) According to the "Staff Report to the Committee on Revenue and Taxation," it would be difficult to determine the full market value at the time of completion and that it makes for a more accurate valuation to wait until the time of sale. Also, this provision eliminates the need for an interim assessment at the time of completion, thereby promoting administrative efficiency.

Further, the state has a legitimate interest to provide affordable housing. This concern is reflected in several statutes. "The Legislature finds and declares that there currently is a housing crisis in California and it is essen-

tial to reduce delays and restraints upon expeditiously completing housing projects." (Gov. Code, § 65009, subd. (a)(1).) "The Legislature finds and declares that there exists a severe shortage of affordable housing, especially for persons and families of low and moderate income, and that there is an immediate need to encourage the development of new housing . . . ." (Gov. Code, § 65913; see also Gov. Code, §§ 65864, 11346.55.) By removing the builders' inventory of houses from supplemental assessment, the selling price will be less than if the builders were required to pay a supplemental tax and increase the sales price by this amount.

In light of the Legislature's broad power in making classifications and drawing lines to implement a reasonable system of taxation (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at p. 234), we conclude that the classifications drawn herein are rationally based and do not violate the equal protection provisions of either the federal or state Constitutions.

### III

■ The State Board of Equalization challenges the trial court's finding that former section 75.5 amounts to an unauthorized exemption in violation of article XIII, section 1 of the California Constitution. As previously enacted, section 75.5 read: " 'Property' means and includes real property, other than fixtures, which are normally valued as a separate appraisal unit from a structure and mobilehomes subject to taxation under Part 13 (commencing with Section 5800)." (Amended by Stats. 1984, ch. 946, § 2, eff. Sept. 10, 1984.) The former section must be read in conjunction with section 75.1, which provides: "Except where the context or the specific provisions of this chapter otherwise require, all of the following apply: [¶] (a) The definitions in this article govern the construction of this chapter . . . ." Thus, fixtures which were previously taxed as improvements to real property were not subject to supplemental assessment as real property during the effective period of the statute.

Article XIII, section 1 of the California Constitution requires that all property, not exempted by the state or federal Constitutions, be taxed uniformly. (*Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco, supra,* 8 Cal.3d at p. 946; *Trabue Pittman Corp.* v. *County of L.A.* (1946) 29 Cal.2d 385, 391-392 [175 P.2d 512].) ■ "It is well settled that for purposes of taxation the definitions of real property in the revenue and taxation laws of the state control whether they conform to definitions used for other purposes or not. [Citations.]" (29 Cal.3d at p. 393.)

■■■ Section 104 defines real property to include improvements, and section 105 defines improvements to include fixtures. Furthermore, section 5 of the general provisions of the code provides: "Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction of this code." In contrast, former section 75.5 defines real property to exclude fixtures only for purposes of supplemental assessment. The two statutes are in conflict. Under the usual rule of statutory construction, where a general and specific statute are inconsistent, the latter is controlling. (Code Civ. Proc., § 1859.) The supplemental assessment provisions are specific to the general provisions of the Revenue and Taxation Code and, therefore, the definition of real property contained in former section 75.5 controls.

We still must determine if the provision excluding fixtures from supplemental assessment is an unconstitutional exemption. We hold that it is not. As with newly constructed property held for sale, discussed in part II, *ante,* the Legislature's decision not to subject certain property to supplemental assessment does not amount to an exemption, since this property is assessed at its full cash value on the following lien date. It is the same with fixtures. As stipulated by the parties, former section 75.5 does not alter the assessment of fixtures as real property on the regular assessment roll. In so doing, the Legislature simply delayed the time at which full assessment of fixtures would be made. The Legislature is accorded broad flexibility in making classifications for taxation purposes. (*Haman* v. *County of Humboldt, supra,* 8 Cal.3d at pp. 925-926; *Sea-Land Service, Inc.* v. *County of Alameda, supra,* 12 Cal.3d at p. 780.) We conclude that former section 75.5 does not result in an exemption for taxation and does not violate article XIII, section 1 of the California Constitution. The trial court erred in ruling that section to be unconstitutional.

We reverse the judgment insofar as it provides that former section 75.5 and section 75.12 violated California Constitution, article XIII, section 1. In all other respects, the judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied December 11, 1985, and the petition of plaintiffs and appellants for review by the Supreme Court was denied February 20, 1986.