[No. A035858. First Dist., Div. Three. Mar. 30, 1987.]

VACU-DRY COMPANY, Plaintiff and Appellant, v.
COUNTY OF SONOMA, Defendant and Respondent.

948

---

Benjamin I. Delancy and Severson, Werson, Berke & Melchior for Plaintiff and Appellant.

James P. Botz, County Counsel, Mark J. Freed, Chief Deputy County Counsel, and Linda A. Beliveau, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**MERRILL, J.**—Appellant Vacu-dry Company filed this action seeking a refund of property taxes paid in fiscal year 1983-1984, on the ground that respondent County of Sonoma's assessment procedures violated article XIII A of the California Constitution. The trial court sustained respondent's demurrer without leave to amend, and we affirm the judgment dismissing the action.

### STATEMENT OF THE CASE

The facts in this case are not in dispute. On May 3, 1983, appellant purchased several parcels of real property in the County of Sonoma. For property tax purposes for the fiscal year 1983-1984, that property had been assessed as of the March 1, 1983, lien date at a value in excess of $14 million; appellant paid the taxes levied, over $146,000, in full.

Appellant had paid less for the property than the March 1, 1983, assessed value. That lower value, approximately $5.7 million, was reflected on the secured roll for the next succeeding lien date, March 1, 1984. Appellant filed a claim for a refund of the taxes paid in fiscal 1983-1984. Appellant reasoned that when it acquired the property, assessment of the property should have been immediately reduced on the 1983-1984 secured roll to reflect the purchase price, and the taxes reduced accordingly. The claim was denied by the board of supervisors of respondent County of Sonoma. Appellant then filed the instant action, contending that respondent's use of the March 1983 valuation in levying taxes for fiscal year 1983-1984 violated article XIII A, section 2 of the California Constitution. Respondent's demurrer was sustained without leave to amend and the action dismissed, and this appeal followed.

### DISCUSSION

█    In reviewing a complaint against a general demurrer, this court must treat the demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318.)  █   A trial court does not abuse its discretion in sustaining a demurrer without leave to amend if the complaint fails to

state a cause of action and if, under applicable substantive law, there is no reasonable possibility that amendment would cure the defect. (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64.)

Prior to the adoption of article XIII A by the voters in June 1978, real property was assessed for tax purposes every year according to its value as of the lien date for the upcoming fiscal year. (Rev. & Tax. Code, §§ 401, 401.3 [added by Stats. 1970, ch. 144, § 1, p. 390; amended by Stats. 1986, ch. 608]; *Schoderbek* v. *Carlson* (1984) 152 Cal.App.3d 1027, 1031 [199 Cal.Rptr. 874].)[1] The lien date is the first day of March preceding the fiscal year for which taxes are levied. (§ 2192.) The taxing agency's right to the taxes for the fiscal year was fixed as of the lien date, even though the amount of the tax to be levied was unknown as of that date. (*California Computer Products, Inc.* v. *County of Orange* (1980) 107 Cal.App.3d 731, 736 [166 Cal.Rptr. 68].) On or before July 1, a county assessor was obligated to complete preparation of the local assessment roll, listing the assessed value of all real property within the county, among other information. (§§ 601, 602, 616.) Thereafter, each county's board of supervisors fixed the tax rate and levied the taxes for that fiscal year. (§ 2151.) In sum, determining the value of property was but one of several steps in the process of property assessment and levy of property taxes. (See Ehrman & Flavin, Taxing Cal. Property (2d ed. 1979) §§ 12.1, 28.1-28.2, pp. 295, 631-632.)

As relevant here, article XIII A has affected that process by imposing a limitation on the tax rate, which "shall not exceed One percent (1%) of the full cash value of such property. . . ." "Full cash value" is defined in pertinent part as ". . . the appraised value of real property when purchased [or] newly constructed . . . ." (Cal. Const., art. XIII A, § 1, subd. (a), § 2, subd. (a).) With the adoption of article XIII A, therefore, all real property is no longer to be reappraised annually; instead, only newly purchased or constructed property is to be reappraised in a given year, and its value determined as of the date of sale or completion of construction rather than the fixed lien date. (*Schoderbek* v. *Carlson, supra*, 152 Cal.App.3d at pp. 1035-1036.)

Among the measures enacted by the Legislature to implement article XIII A was Revenue and Taxation Code section 50, which provides in pertinent part: ". . . values determined for property which is purchased or changes ownership after the 1975 lien date shall be entered on the roll for the lien date next succeeding the date of the purchase or change in ownership." ■

---

[1]Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.

Appellant acknowledges that respondent complied with section 50 when it reappraised appellant's property as of the date of its May 1983 purchase and entered that new value on the roll for the next succeeding lien date, March 1, 1984. Appellant argues, however, that the application of section 50 to its property violated article XIII A because it permitted appellant to be taxed for the 1983-1984 fiscal year on a value greater than the property's acquisition value.

We cannot agree. Appellant reads too much into article XIII A. ■ ■ The Legislature has broad power to impose taxes and regulate their collection, except where that power has been expressly limited by the Constitution. (*Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 624 [194 Cal.Rptr. 294].) As explained recently in *Shafer* v. *State Bd. of Equalization* (1985) 174 Cal.App.3d 423 [220 Cal.Rptr. 59], article XIII A unquestionably changed the rate of permissible locally assessed property taxes from assessment based on current value to assessment based on acquisition value. However, it did not amend what the *Shafer* court describes variously as the "existing *methods* of assessment" or the "*timing mechanism* for valuation and collection." (*Id.,* at pp. 427-428.) In other words, before the adoption of article XIII A, property was taxable in a fiscal year based on its value at a fixed date, regardless of any subsequent actual change in that value during that fiscal year. (See § 2192.) Any such change would only be reflected in the appraisal on the next lien date and taxed in the next fiscal year.[2] Nothing in article XIII A expressly changed or prohibited that aspect of the assessment procedure. Accordingly, the Legislature did not violate article XIII A when it incorporated the rate and assessed value restrictions of the constitutional amendment into the existing assessment procedure by enacting section 50.

*Schoderbek* v. *Carlson, supra,* 152 Cal.App.3d 1027, upon which appellant relies, does not hold otherwise. *Schoderbek* holds only that when property is sold, it must be reappraised to reflect its value as of the actual date of sale. (*Id.,* at pp. 1032-1036.) But *when* that new valuation must be entered on the assessment roll was not at issue in *Schoderbek,* and the case is of no assistance to appellant.

■ We are aware that to eliminate the delay between a change in valuation after the lien date and reassessment, the Legislature recently enacted legislation providing for supplemental assessments if a change of ownership occurs between one lien date and the next. (§ 75 et seq.) The supplemental

---

[2]That general rule was not without exceptions. For example, county boards of supervisors were authorized to adopt ordinances providing relief for property within the county which had been damaged or destroyed, without fault of the owner, in an area proclaimed a disaster area. (See Ehrman & Flavin, *op. cit. supra,* §§ 7.15, 11.1-11.2.)

assessment may result in a recomputation of taxes due and either an additional tax bill or a refund for the assessee. (§§ 75.11, 75.41, 75.42, 75.43; see generally *Shafer* v. *State Bd. of Equalization, supra,* 174 Cal.App.3d at pp. 426-428.)[3]

The Legislature declared that its intent in enacting the supplemental assessment procedure was to "fully implement Article XIII A ... and to promote increased equity among taxpayers by enrolling and making adjustments of taxes resulting from changes in assessed value due to changes in ownership ... at the time they occur. ..." It explained that under prior law, recognition of increases in value due to changes in ownership and new construction was delayed from four to sixteen months, resulting in "an unwarranted reduction of taxes for some taxpayers with a proportionate and inequitable shift of the tax burden to other taxpayers." (§ 75.)

In *Shafer* v. *State Bd. of Equalization, supra,* 174 Cal.App.3d 423, the court held that this supplemental assessment legislation merely creates what it described as a new timing mechanism for the valuation and collection of taxes. The court rejected the argument that the procedure imposes new taxes in violation of article XIII A, sections 3 and 4. In its analysis, the court emphasized that this new legislation is consistent with the purpose behind article XIII A. (*Id.,* at pp. 426-428.) Nevertheless, the court did *not* hold that the enactment of the supplemental assessment procedure was constitutionally compelled, and its enactment does not establish that the prior method of assessment under section 50 was unconstitutional.

Judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.

---

[3]This legislation is of no assistance to appellant as it applies only to changes of ownership occuring on or after July 1, 1983. (§ 75.80.)