Filed 12/21/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| YAAKOV and SARAH GREENSPAN, Individually and as Cotrustees of the GREENSPAN FAMILY TRUST, | B323864 (Los Angeles County Super. Ct. No.19STCP03626) |
| Plaintiffs and Appellants, | |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Reversed and remanded, with directions.

Westland Real Estate Group, Asher B. Fried, and Bashir Eustache, for Plaintiffs and Appellants.

Dawyn R. Harrison, County Counsel, and Drew M. Taylor, Deputy County Counsel, for Defendants and Respondents.

———————————————————

Proposition 13, adopted by voters in 1978, amended California's Constitution to limit real property taxes to 1 percent of a property's base-year value, with an annual 2 percent cap for inflation. A property's base-year value may be reestablished only upon purchase, new construction, or a change in ownership. In addition, the assessed value of the property must be allocated between land and improvements.

In April 2014, appellants Yaakov and Sarah Greenspan purchased a 2,400-square-foot home in Long Beach for $900,000. The County of Los Angeles (County) appraised the property with a new base-year value of $900,000, allocating $540,000 to the land and $360,000 to the improvements. In 2016, the Greenspans demolished the original residence, except the garage, and built a new single-family home on the property.

Under Revenue and Taxation Code sections 51 and 75.10,[1] the value of any structure removed by a homeowner is to be deducted from the prior base-year value. Once new construction is completed, the value of the new construction is appraised and assigned a new base-year value going forward, which is then added to the existing base-year value allocated to the land.

This is not what occurred in this case. Instead, the Los Angeles County Assessor (Assessor) took the value of the

———————————

[1]     All further statutory references are to the Revenue and Taxation Code unless otherwise specified.

2

structure demolished ($320,000) and reallocated that entire amount to the land portion of the purchase price, leaving a $40,000 "credit" for the remaining garage. This resulted in a new allocation of the original purchase price of $860,000 to land and $40,000 to improvements. The Assessor then separately appraised the value of the new construction at $1,183,130 and added this amount to the reallocated land and improvements.

The County's justification for the failure to give the Greenspans credit for the demolished residence was a policy allowing an assessor to reallocate to land any portion of the property substantially renovated within two years of the purchase date on the assumption the owner purchased the property for land value alone. The County argues that it can do this because section 51.5 allows for the correction of any errors or omissions made in the original determination of the base-year value.

The Greenspans filed separate applications to the Los Angeles County Assessment Appeals Board (Board) challenging (1) the County's reallocation of their original purchase to primarily land as a practice contrary to statutory law, and (2) the County's valuation of their new construction as excessive. After prevailing on their new construction challenge, the Greenspans filed suit against the County in superior court challenging the Board's denial of their reallocation appeal and seeking repayment for any taxes overpaid. The trial court denied relief and entered judgment in favor of the County. On appeal, the Greenspans contend, and we agree, that the County's reallocation of their base-year land and improvement value was contrary to statutory law. The Assessor's automatic reallocation of the base-year value for the entire structure removed (with "credit" for the remaining

3

garage) cannot be squared with sections 51 and 75.10, which command that a property owner receive a reduction in previously assessed base values for portions of any property removed. To the extent section 51.5 allows for error correction, that statute was enacted with an extensive legislative declaration stating any such corrections must be consistent with Proposition 13 and existing statutory valuation standards. In light of this statutory scheme, the Board's denial of the Greenspans' allocation appeal was legal error subject to our judicial correction.

We therefore reverse the trial court's judgment and direct the trial court to enter a new judgment vacating the decision of the Board and remanding the matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND
### A.     The Framework for Tax Refunds

When a taxpayer seeks to challenge the assessment of its property, it may petition the Board for a reduction. (*Fisher v. County of Orange* (2022) 82 Cal.App.5th 39, 51 (*Fisher*).) "'Although a local assessment appeals board decision arises from an administrative hearing process, the mechanism for seeking judicial review of the decision is "'significantly different from that of other administrative agency decisions. Ordinarily, the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund.'"'" (*Ibid.*; accord, *William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 10–11 (*William Jefferson*).)

4

**B. Property Purchase and Initial Assessment in 2014**

On March 20, 2014, the Greenspans purchased a home on Locust Avenue in Long Beach, California for $900,000.[2]  The change in ownership triggered a reassessment of the property. The Assessor appraised the property with a new base-year value (i.e., total taxable value) of $900,000, the purchase price, and allocated that value as follows:  $540,000 for the land and $360,000 for the improvements on the property.

In February 2016, the Greenspans started a substantial renovation of their property, which was completed on December 28, 2016.  The Greenspans assert that they initially did not intend to remove the original residence but found it was necessary to do so once renovation was underway.  They ultimately demolished the original residence, except the garage, and built a new single-family residence on the property.

**C. Reallocation of 2014 Base-Year Values**

In 2017, based on the Greenspans' demolition of the original residence, the Assessor modified the 2014 base-year value of the property, allocating more of the purchase price to the land than to the improvements that were on it.  While the improvements were initially assessed at $360,000, the Assessor reduced that to $40,000 in recognition that only the original garage remained.  This resulted in a base-year land value of $860,000, with $40,000 in remaining improvements.

---

[2]      On February 13, 2017, appellants transferred the property to themselves as cotrustees of the Greenspan Family Trust, a revocable living trust.

The County then issued "an *adjusted* property tax bill" for the 2016–2017 roll year. Prior to the adjustment, the 2016–2017 base value for the property was a total of $931,979, with an allocation of $559,188 to land and $372,791 to improvements.[3] After modification, the total value was $931,980, with $890,559 allocated to land and $41,421 allocated to improvements.[4]

In an email exchange with the Assessor's office, the Greenspans asked why they did not "get credit for the old house." The Appraiser responded, "[W]e look at when you purchased the property and when you requested the permit to demolish. The purchased [*sic*] date we have is [April 29, 2014,] and the permit to demolish the property was requested on [January 19, 2016,] and the permit to build was requested on [February 5, 2016]. Unfortunately it did not go beyond the two years." After the Greenspans asked the County's appraiser "to send . . . the code that references the [two-year] requirement," he responded that "[t]he [Revenue and Tax] code that allows us to reallocate the value from the improvement to land can be found on the [Board of Equalization] website . . . section 51.5b." He added, "[T]o be exact[,] the portion of the garage that was not demolished was given as credit."

---

[3]     This amount reflects the initial purchase price allocations, plus any standard inflationary increases permitted by Proposition 13.

[4]     We observe that although this base value is $1 higher than the prior total base value, neither party attaches any significance to this $1 difference.

## D.    Appraisal of the Newly Constructed Residence

In 2017, the Assessor also appraised the new residence the Greenspans constructed and issued a *"supplemental* property tax bill" for the 2016–2017 roll year.  The notice reflected a "net assessed value" of $1,183,130 due to the "completion of new construction occurring [December 28, 2016]."  The Assessor valued the new construction at $1,183,130, estimating the costs of the various improvements added to the property by the new construction.  This amount was then added to the previously reallocated land value of $890,559 and improvements of $41,421, for a total sum value of $2,115,110.

## E.    The Appeal Before the Board

The Greenspans separately appealed (1) the Assessor's modification of the initial base-year allocations between land and improvements, and (2) the supplemental assessment of the new construction completed on December 28, 2016.  The Greenspans argued (1) the method used by the County in 2017 to retroactively reallocate the 2014 value of their original purchase between the land and improvements was based on an improper presumption and contrary to statutory law, and (2) the value the County assigned to their newly renovated home was excessive.

In their applications, the Greenspans set out their challenges to the valuation numbers as follows:

| 4. Value | A. Value on Roll | B. Applicant's Opinion of Value |
|---|---|---|
| Land | $890,559 | $559,188 |
| Improvements/Structures | $1,224,551 | $1,041,421 |
| TOTAL | $2,115,110 | $1,600,609 |

At an initial hearing on January 31, 2018, a Los Angeles County Assessment Hearing Officer agreed with the Greenspans' position in both appeals. The hearing officer recommended to the Board that the value of the property be allocated between the land and improvements according to the values the Greenspans assigned to them in their applications for relief.

The Assessor rebutted the hearing officer's recommendation, and a hearing before the Board was set for February 22, 2019. At the hearing, the County presented new pre-construction and post-construction appraisal reports bearing the dates February 5 and February 21, 2019, respectively. The pre-construction appraisal compared the property to three smaller vacant-land lots and valued the property as if it were vacant land on December 28, 2016. The post-construction appraisal valued the property with the new construction completed as of December 28, 2016, and recommended a reduction in value from $1,183,130 to $963,350 for the new construction.

On February 28, 2019, the Board issued its decision in both appeals.[5] The Board denied that the value of the property had been incorrectly allocated between land and improvements. However, the Board recommended the value of the post-construction improvements be reduced. In reaching its decision, the Board set out the final valuation numbers as follows:

_____

[5]        The Greenspans did not request findings of fact from the Board.

8

|  | Prior Tax Value | Board Found Value | Net Change in Value |
|---|---|---|---|
| Land | $890,559.00 | $890,559.00 | $0.00 |
| Improvements | $1,224,551.00 | $1,004,771.00 | ($219,780.00) |
| **Taxable Value** | **$2,115,110.00** | **$1,895,330.00** | **($219,780.00)** |

## F.  The Trial Court Refund Action

On September 27, 2019, the Greenspans filed their first amended complaint (FAC), the operative pleading in the trial court.  The FAC sought a refund of any excess taxes paid based on the reallocation of improvements to land that occurred as of 2016.  In the alternative, the complaint sought an order remanding the matter to the Board for reconsideration of the 2016 assessment that did not utilize the reallocation practice that the Assessor had employed previously.

On April 8, 2022, the trial court ruled in favor of the County.  It entered judgment on June 15, 2022.  The Greenspans timely appealed.

## DISCUSSION

## A.  Standards of Review

The Board's "'"'factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard.' [Citation.]" [Citation.] When the assessment appeals board decides a question of law, such as the interpretation of a statute, courts are authorized to conduct an independent reassessment.'" (*Fisher, supra*, 82 Cal.App.5th at p. 51; accord, *Manson Construction Co. v. County of Contra Costa* (2020) 56 Cal.App.5th 1079, 1087.)

When interpreting a statute, "our core task . . . is to determine and give effect to the Legislature's underlying purpose

9

in enacting the statutes at issue." (*McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227; accord, *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.)  "We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose. [Citation.]  We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*McHugh, supra*, at p. 227; accord, *Jarman, supra*, at p. 381.)

## B.    Agency Rules, Handbooks, and Annotations

Pursuant to Government Code section 15606, subdivision (c), the State Board of Equalization (SBE) has promulgated regulations that are referred to as the "Property Tax Rules" and are located at Title 18, Public Revenues, Chapter 1 of the California Code of Regulations.  The Property Tax Rules "have the force and effect of law." (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1152.)

The SBE has also issued handbooks for use by assessors throughout the state. (*Torres v. San Francisco Assessment Appeals Bd. No. 1* (2023) 89 Cal.App.5th 894, 899–900 (*Torres*).) """Although assessors' handbooks are not regulations and do not possess the force of law, they . . . have been relied upon and accorded great weight in interpreting valuation questions.""" (*Id.* at p. 900; *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 735–736.)

Finally, the SBE periodically publishes non-binding, advisory "Annotations" on its website. (Cal. Code Regs., tit. 18, § 5700.)  According to the SBE, these Annotations "are a research tool" and contain its counsel's opinions regarding "the application

10

of the statutory law, regulatory law, or judicial opinions to a particular factual circumstance." (*Id*., tit. 18, § 5700, subd. (c); *Phillis v. County of Humboldt* (2020) 59 Cal.App.5th 432, 443 (*Humboldt*).)

Where the SBE has not adopted a formal rule or regulation concerning a particular tax issue, its interpretation of the statutes and existing regulations in assessing taxes due is subject to broad judicial review. (See *Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 65; see also *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 ["Unlike quasi-legislative rules, an agency's interpretation does not implicate the exercise of a delegated lawmaking power; instead, it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts"]; see also *Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 859 [observing that "[a]n agency's ad hoc assertion of a statutory interpretation in a particular matter or in the course of litigation . . . does not engender the same degree of respect"].)[6]

_____

[6] We take judicial notice of the Assessor's Handbook and SBE Annotations. (*County of San Diego v. Assessment Appeals Bd. No. 2* (1983) 140 Cal.App.3d 52, 59; *Hunt-Wesson Foods, Inc. v. County of Alameda* (1974) 41 Cal.App.3d 163, 180; see *Fisher, supra,* 82 Cal.App.5th at pp. 48–49; Evid. Code, §§ 452, subd. (c) [judicial notice may be taken of "[o]fficial acts of the legislative, executive, and judicial departments of . . . any state of the United States"], 459, subd. (a); cf. *Humboldt*, *supra*, 59 Cal.App.5th at p. 437 [discussing various annotations].)

11

## C. Proposition 13 and New Construction

### 1. *Proposition 13*

"In California all real property and business personal property is taxable 'in proportion to its full value' unless specifically exempted. (Cal. Const., art. XIII, § 1, subd. (b).)" (*County of Los Angeles v. Raytheon Co.* (2008) 159 Cal.App.4th 27, 34.) "In 1978, Proposition 13 amended the California Constitution to limit real property taxes to 1 percent of a property's base[-]year value adjusted annually by an inflation factor not to exceed 2 percent of the prior year's value. (Cal. Const., art. XIII A, §§ 1, subd. (a), 2, subd. (b); [citations].)" "A property's base[-]year value may be reestablished only if the property is purchased, is newly constructed, or there is a change in ownership." (*William Jefferson, supra,* 228 Cal.App.4th at p. 9; see *Fisher, supra,* 82 Cal.App.5th at p. 49; §§ 110.1, subd. (f), 51, subd. (a); Cal. Code Regs., tit. 18, § 460, subd. (b)(5).) "Land and improvements shall be separately assessed." (§ 607; Cal. Const., art. XIII, § 13.)

The purchase price is rebuttably presumed to be the "full cash value" or "fair market value" if the terms of the transaction were negotiated at arm's length in an open market. (§ 110, subd. (b).) Thereafter, entries onto the assessment roles are generally """done pro forma without the need to exercise one's judgment as to value, simply by applying an inflation factor to the previous year's entry.""" (*Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 918, fn. 1, internal citations omitted.)

In the case of new construction, "additions, alterations, or other changes to existing property may trigger a partial reassessment under Proposition 13, such that a new base[-]year

value will be established for the newly constructed portion of the property." (*Wunderlich v. County of Santa Cruz* (2009) 178 Cal.App.4th 680, 690 (*Wunderlich*)); § 71; Cal. Code Regs., tit. 18, § 463, subd. (a).)[7]

### 2. *Statutory Valuation of New Construction*

The valuation of new construction is addressed by several sections of the Revenue and Taxation Code. (See generally *Pope v. State Bd. of Equalization* (1983) 146 Cal.App.3d 1132, 1135–1136 (*Pope*) [observing the Legislature passed legislation to address concept of "newly constructed property" after voters adopted Proposition 13].)

First, under section 51, if a portion of real property has been destroyed or removed, including "by voluntary action by the taxpayer," the base-year value of the property going forward "*does not include* that portion of the previous base[-]year value . . . that was attributable *to any portion of the property that has been destroyed or removed.*" (§ 51, subds. (b), (b)(2), italics added.)

Second, under section 75.10, subdivision (a), an assessor must appraise construction at its full value on the date that it is completed and determine a new base-year value for the value of

_____

[7] In 1983, the Legislature added various provisions to ensure that adjustments in assessed value were made as of the date a new event occurs (i.e., completion of new construction or change in ownership). These provisions were intended to eliminate any delay between valuation and reassessment and promote equity among taxpayers. (*Chevron USA, Inc. v. County of Kern* (2014) 230 Cal.App.4th 1315; *Shafer v. State Bd. of Equalization* (1985) 174 Cal.App.3d 423, 426; Stats. 1983, ch. 498, § 133; §§ 71, 75, 75.10.)

the new construction—"except as provided in . . . subdivision (b)."
(§ 75.10, subd. (a).)  Under subdivision (b), "the removal of a
structure from land" qualifies as its own "new construction" event
but requires that "the new base[-]year value of the remaining
property (after removal of the structure) shall be determined in
the same manner as provided in subdivision (b) of section 51."
(§ 75.10, subds. (a), (b).)  Thus, section 75.10 is consistent with
section 51 regarding the treatment of removed structures:  the
value of the removed structure must be deducted from the
existing base-year value.

Consistent with these principles, section 71 provides that
when new construction is complete, "[t]he assessor shall
determine the new base[-]year value *for the **portion** of any
taxable real property which has been newly constructed*.  The
base[-]year *value of the remainder of the property assessed, which
did not undergo new construction, shall not be changed*."  (§ 71,
italics and emphasis added.)

The interaction of these statutes is reflected in Property
Tax rule 463, subdivision (a) as follows:

> "When real property or a portion thereof, is
> newly constructed after the 1975 lien date, the
> assessor shall ascertain the full value of such 'newly
> constructed property' as of the date of completion.
> *This will establish a new base[-]year full value **for
> only that portion of the property which is newly
> constructed**, whether it is an addition or alteration.*
> The taxable value on the total property shall be
> determined by *adding the full value of new
> construction to the taxable value of preexisting*

14

*property **reduced** to account for the taxable value of property removed during construction.*  The full value of new construction is only that value resulting from the new construction and does not include value increases not associated with the new construction." (Cal. Code Regs., tit. 18, § 463, subd. (a), italics and emphasis added.)

Similarly, Property Tax rule 461 states, "[T]he prior year taxable value of real property, or portion thereof, physically removed from the site shall be deducted from the property's prior year taxable value, provided that such net value shall not be less than zero."  (Cal. Code Regs., tit. 18, § 461, subd. (c).) Subdivision (a) of that section expressly recognizes that "[s]ection 2 of article XIII A of the California Constitution provides, with certain exceptions stated therein, that real property shall be reappraised if purchased, newly constructed (regulation 463) or a change in ownership occurs (regulation 462) after the original base year."  (*Id.*, tit. 18, § 461, subd. (a); see also *Pope, supra,* 146 Cal.App.3d at p. 1135 [noting SBE adopted Property Tax rules 460 through 467 "to deal more broadly with the issues raised by article XIII A"].)

Finally, section 410 of the Assessor's Handbook ("Assessment of Newly Constructed Property") provides the following example of the interaction of these statutes and regulations:

> "A taxpayer purchased a 1,200[-]square-foot home for $400,000, with $350,000 allocated for land and $50,000 for improvements.  The home is located

15

in a highly coveted neighborhood that has seen many average homes renovated into large mansions.  The taxpayer gutted the home to its foundation and studs, built a new perimeter foundation to support additional floors, and rebuilt the home into a three-story, 3,600[-]square-foot mansion.

The new construction converted the renovated structure to the status of substantially equivalent to new.  The base[-]year value of the improvements should be reappraised to the current market values of other comparable properties in the area.  *A portion of the existing base[-]year value should be retained for the studs and foundation system that were not removed.  The base[-]year value of the land would not change*."

(California State Board of Equalization, Assessor's Handbook (AH), § 410:  Assessment of Newly Constructed Property (May 2014, reprinted Jan. 2015), p. 29, italics added.)

In sum, the Revenue and Taxation Code sections, Property Tax rules, and the Assessor's Handbook are consistent on this point:  After a property is purchased and acquires a new-base year value, the value of any subsequently removed structure is to be deducted from the base-year value.  When the new construction is completed, any new improvements are appraised and assessed and their value is then added to the existing base values.  The value of the unchanged portion of the property, however, remains the same.  This allows a purchaser to retain

their Proposition 13 benefits going forward for any property that remains unchanged.

Property Tax rule 463 recognizes these principles by stating: "In any instance in which an alteration is substantial enough to require reappraisal, *only the value of the alteration shall be added to the base[-]year value **of the pre-existing land or improvements**.* Increases in land value caused by appreciation or a zoning change rather than new construction shall not be enrolled . . ." (Cal. Code Regs., tit. 18, § 463, subd. (b)(2)(A), italics and emphasis added.)

The County neither discusses nor denies the existence of these statutes regarding the valuation of new construction.

**D.      The County's Reallocation of the Value of Removed Property to the Land Value Was Contrary to Law**

It is undisputed the Assessor reallocated the entire value of the improvements removed by the Greenspans to their purchase-price base-year land value based upon the non-binding analysis of SBE's counsel embodied in Annotation 170.0005 on the SBE website.

1.      *Annotation 170.0005*

Annotation 170.0005 contains the following summary of a letter issued by SBE counsel in August 2005:

"*Allocation to Value.* An assessor may reallocate land and improvement values for a single-family residence when a property is substantially renovated within two years of its original purchase. Revenue and Taxation Code section 51.5 allows an assessor to correct any

17

base[-]year value error or omission within four years after enrolling an assessment if that error was the result of the exercise of value judgment."

The cited letter issued by SBE counsel reflects the following response to an inquiry sent by a taxpayer:[8]  A property owner acquired a single-family residence in October of 2003 for $245,000, and the Assessor allocated that purchase price as follows:  $200,000 to land and $45,000 to improvements.  (State Bd. of Equalization, letter of counsel to a taxpayer, Aug. 2, 2005, p. 1 (hereinafter letter of counsel).)  At the time of purchase, the house was inhabitable but also "run down."  While renovating the improvements, the owner encountered problems that caused the renovation to become a major remodel.  (Letter of counsel, *supra*, at p. 2.)  To correct an unrelated error, the county assessor sent an appraiser to visit the property, and after that visit, the Assessor sent a supplemental assessment notice, dated January 2005, reflecting that the purchase price of $245,000 had been reallocated to $244,000 to land and $1,000 to improvements.

Upon inquiry, the letter writer was informed that it was the assessor's policy to reallocate most of the purchase price to land if a property has been substantially renovated within two years of its original purchase, relying on the "rationale that the owner bought the property for the land value alone if the improvements were torn down within that two-year period." (Letter of counsel, *supra*, at p. 2.)

---

[8]     According to the SBE:  "Annotations do not embellish or interpret the legal rulings of counsel which they summarize."  (Cal. Code Regs., tit. 18, § 5700, subd. (a).)

18

The letter writer asked SBE counsel three questions: (1) whether the county assessor's policy reflects the policy of other county assessors or the SBE; (2) what provisions of Proposition 13 and/or California Revenue and Taxation Code authorize that practice; and (3) what steps can be taken to change this policy.[9] (Letter of counsel, *supra*, at p. 1.)

As to the first question, SBE counsel stated that while it was aware that "other county assessors have also employed this practice" of reallocating most of the purchase price to land if a substantial renovation occurred within two years, the SBE had not weighed in on the practice. Counsel stated, "[T]he [SBE] has not issued any policies or guidelines promoting or prohibiting its application." (Letter of counsel, *supra*, at p. 2.)

In response to the second question, counsel stated, "We believe that this practice is authorized by section 51.5, which requires county assessors to correct errors or omissions made in the determination of new base[-]year values." (Letter of counsel, *supra*, at p. 3.) In discussing the situation described by the inquiring party, counsel stated the following: "Based on the major renovation, the assessor apparently believed that an error in value judgment occurred when enrolling the original base[-]year values for this property. Events subsequent to that change in ownership led the assessor to reallocate the land and improvement values, changing the base[-]year values for both during January 2005 . . . . Since the assessor discovered an apparent error in value judgment within the four-year statute of limitations prescribed by subdivision (b) of section 51.5, we

---

[9]  Throughout the letter, the name of the county at issue is omitted. In the trial court, the Greenspans referred to this policy as the "L.A. County method."

believe that the assessor was required to correct that error." (*Ibid*.) The SBE later summarized this by stating, "*To the extent that the original land and improvement value allocation may have been an error in value judgment*, we believe that section 51.5 would require its correction." (*Id*. at p. 4, italics added.)

As to the letter writer's third query, SBE counsel stated the property owner could appeal the reallocation between land and improvements to the Board, alleging the reallocation resulted in an amount that was too high for either the land or improvements. (Letter of counsel, *supra*, at pp. 3–4.) This is what the Greenspans did in this case. In one appeal, they challenged the reallocation from improvements to land, arguing it was contrary to statutory law. They challenged the subsequent valuation of their completed new construction in a separate board appeal.[10]

The letter concluded, "The views expressed in this letter are only advisory in nature. They represent the analysis of the legal staff of the Board based on present law and the facts set

---

[10] Specifically, in their application challenging the reallocation reflected in the County's "escape" assessment, the Greenspans checked the box indicating they were appealing the "[a]llocation of value of property [a]s incorrect (e.g., between land and improvements)."

To the extent the assessment appeals form contains a specific category for allocation *between* land and improvements, we observe that in 1999 in Annotation Number 190.0008, SBE counsel advised that "[a] local assessment appeals board has jurisdiction to hear supplemental assessment and base[-]year value appeals involving the proper allocation of a total property value between land and improvements for applications filed within the time limitations periods of Revenue and Taxation Code section l605(b) for supplemental assessments or Revenue and Taxation Code section 80 for base[-]year value appeals." (Annot., State Bd. of Equalization, Allocation of Value (1999).)

forth herein, and are not binding on any person or public entity." (Letter of counsel, *supra*, at p. 5.)

2. *Automatic Reallocation of the Value of Removed Improvements to Land*

In this case, the Assessor did not deduct the original value of the residence from the total value, leaving the original land value intact, and then add on the value of the new construction. The Assessor automatically reallocated the entire value of the improvements voluntarily removed by the Greenspans to the base land value from 2014, giving them "credit" for the garage left on site. It did so based solely on the fact the Greenspans requested their permit to demolish that portion of the structure within two years of purchase. This automatic reallocation was contrary to sections 51 and 75.10 which, consistent with Proposition 13, require that the value of any structure removed from real property be deleted from the base-year value. To the extent the Assessor relied upon section 51.5, which allows an assessor to correct "any error or omission" in base-year value, it was not appropriate to do so here.

3. *Reliance on Section 51.5*

Section 51.5 discusses circumstances under which county assessors may correct assessments of base-year value. Section 51.5(a) provides that errors in the determination of base-year value that do not involve the assessor's judgment shall be corrected in the year they are discovered. More pertinent here, section 51.5(b) provides, "An error or an omission [in the determination of a base[-]year value] which involves the exercise of an assessor's judgment as to value may be corrected only if it

21

is . . . corrected, within four years after July 1 of the assessment year for which the base[-]year value was first established." Section 51.5(c) provides that this four-year time limit does not apply when the errors or omissions result from taxpayer fraud, concealment, misrepresentation, or failure to comply with laws concerning the furnishing of information.[11]

In enacting section 51.5, the Legislature declared, "[F]airness and equity require that county assessors have express authority to make corrections to property tax base-year values whenever it is discovered that a base-year value does not reflect applicable constitutional or statutory valuation standards or the base-year value was omitted." According to the Legislature, "[a]ny limitations imposed upon the assessor's authority to correct these errors would result in a system of taxation which . . . denies the benefits of Article XIII A of the California Constitution [(Proposition 13)] to some taxpayers where the barred error or correction would reduce the base-year value."

---

[11] The County, in issuing the adjusted property tax bill to the Greenspans regarding the reallocation of improvements to land, stated the reallocation was for the following reason: "[R]oll bill correction [for] escaped ass[essment] per sec[tions] 4821 or 531 R[evenue] & T[ax] Code." Section 531 more generally provides: "If any property belonging on the local roll has *escaped* assessment, the assessor shall assess the property on discovery at its value on the lien date for the year for which it escaped assessment. It shall be subject to the tax rate in effect in the year of its escape except as provided in [s]ection 2905 of this code." (§ 531, italics added; cf. *Jensen v. Byram* (1964) 229 Cal.App.2d 651, 652 [county could recover taxes as escaped assessments, where "land was assessed and taxes were paid, but through oversight, there was no assessment of improvements"], overruled on other grounds by *Bauer-Schweitzer Malting Co. v. City and County of San Francisco* (1973) 8 Cal.3d 942, 948.)

Further, the Legislature feared that if assessors failed to place value on property, allowing it to escape taxation, and they could not correct the error, it "would violate the constitutional requirement that all property in the state shall be subject to taxation." The Legislature expressly noted, "Nothing in this act violates either the spirit or the letter of Article XIII A of the California Constitution [(Proposition 13)] since all corrections permitted by it must be consistent with applicable constitutional and statutory valuation standards." (Stats. 1987, ch. 537, § 1(a); see also *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 17–18 [discussing section 51.5 and recognizing legislative statement].)

Here, in 2014, the Assessor set the Greenspans' improvements value at $360,000, 40 percent of the total base-year value. In 2017, the Assessor reallocated $320,000 of that value to land based solely on a presumption: The structure removed had a zero or de minimis value at the time of purchase, otherwise the owner would not have removed it within two years. There is no contention the Assessor reevaluated or even considered what had actually been removed before deeming its original assessment a mistake, enabling it to reallocate more of the base-year value to land. To permit this automatic reallocation to stand would allow the County to circumvent the requirements of Proposition 13 (and effectuating statutes) by automatically raising the land value after the removal of the improvement *and then* tacking on the value of any new improvement after construction is complete.

The County argues that "[t]he Greenspans want credit for the value of house that they themselves elected to tear down." That may be true, but that is what sections 51 and 75.10 direct.

The value of any structure—or portion thereof—voluntarily removed is deleted, while the portion of the base-year value attributable to land is maintained.

The fact that the Greenspans elected to demolish the residence may well have given the assessor cause to consider whether it had made a mistake, but it did not establish that a mistake had been made. (See generally *Carlson v. Assessment Appeals Bd. I* (1985) 167 Cal.App.3d 1004, 1013 [observing subjective value to owner is not an appropriate method of assessment]; *Wunderlich, supra,* 178 Cal.App.4th at p. 689 [observing the separate assessment of land and improvements required by article XII, § 13 of the state Constitution and section 607 are rooted in "'the purpose of equalizing separately the assessments on land and on improvements'"].)[12]

**E.      Remand for a New Hearing**

In their complaint for refund below, the Greenspans requested either "a refund of all excess property taxes paid because of the Assessor's unlawful or improper practice of reallocating improvements to land value" or alternatively "an order that this matter be remanded to the . . . Board, for

---

[12]     Our opinion does not suggest that an appraiser must always separately appraise improvements or land. (See AH, *supra*, § 502: Advanced Appraisal, p. 5 [noting real property is generally appraised as a single unit]; *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 422 [making general observation, in context of regulation addressing declines in market value of petroleum refinery property, that land need not be treated as a "separate appraisal unit"].) Our discussion is limited to the facts and statutes presented.

reconsideration of the escape assessment without taking into consideration the Assessor's reallocation practice." We agree the latter remedy is appropriate here.

The County asserts that during the Board hearing on February 22, 2019, it presented "into evidence a sales comparison appraisal of the Property to determine that the entire purchase price of $900,000 should be allocated to the land." The County argues we should presume the Board relied on this evidence to conclude the reallocation "was valid and supported by substantial evidence." We disagree.

At the hearing, the County submitted two pre-construction appraisals of the Greenspans' property prepared the month of the hearing (February 2019). One appraisal (labeled "pre-construction") valued the Greenspan's property as of December 28, 2016, at $936,650 ($900,000 land and $36,650 improvements) by comparing it to three small-lot vacant-land sales. The appraisal stated that "[the] pre-construction [was] valued as vacant land due to recent sale prior to demolishing of duplex, left workshop and garage." The second appraisal (labeled "Prop. 8") valued the property as of January 1, 2016, at $886,650 ($850,000 to land and $36,650 to improvements) based on the same three vacant-lot comparables.[13] Like the other pre-construction appraisal, this appraisal included the notation that the "2016 Prop. 8 [was] valued as vacant land due to recent sale prior to demolish[ing] of duplex, left workshop and garage." Both appraisals were expressly based upon the premise that the property could be appraised as vacant land because the residence

---

[13]    Proposition 8, passed by the voters in 1978, provides for a temporary reduction in assessed property value based on a subsequent decline in market value. (*Fisher, supra,* 82 Cal.App.5th at p. 49.)

was demolished within two years.  Neither appraisal evaluated the improvements that existed on the property prior to demolition.  Neither appraisal addressed the value of the property in 2014 when the mistaken assessment allegedly took place.[14]

In its final decision on the allocation appeal, the Board left intact the exact figure of $890,559 for the land value challenged by the Greenspans in their appeal.  This figure corresponds to the adjusted property tax bill issued to the Greenspans for the 2016–2017 roll year, which was admittedly based upon the fact the permit to demolish was requested within two years of the date the Greenspans purchased the property.  As such, there is no indication the Board did anything other than deny the allocation appeal based on the reallocation conducted by the County pursuant to its two-year automatic reallocation policy.

Under these circumstances, we conclude a new hearing on the reallocation appeal is the appropriate remedy.  (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 685–686 [determining that appropriate remedy is to remand for new hearing under correct burden of proof, noting "[t]he Board is the constitutionally designated body entrusted with the duty of determining the value of property for the purposes of tax

---

[14]    The County also cites a Multiple Listing Services announcement for the Greenspans' property and argues it was best "characterized as a teardown" because it was marketed in part as a "huge lot for future building purposes."  However, the listing submitted by the County is from a *2008* sale of the property, six years before the Greenspans purchased it, states the property is a 2,476-square-foot home with four bedrooms and two baths and adds:  "Huge possibilities for this property, single family, income or future building site for that incredible estate home."

assessment"].)  In reconsidering the Greenspans' reallocation appeal, however, the Board must recognize the County's automatic reallocation of removed improvements to land is contrary to law.  To the extent the County argues the original-land and improvement-value allocation was an error in judgment, an error should be shown.[15]  We otherwise express no opinion on the merits of any such appeal.  (*Id.* at pp. 685–686; cf. *Georgia-Pacific Corp. v. County of Butte* (1974) 37 Cal.App.3d 461, 477–478.)

---

[15]      We note the County also argues that under Property Tax rule 321, the taxpayer has the burden of proving the property was improperly assessed.  However, Rule 321 states that in any hearing involving an escape assessment, the presumption affecting the burden of proof is in favor of an applicant.  (Cal. Code Regs., tit. 18, § 321, subd. (d); see also *Fisher, supra,* 82 Cal.App.5th at p. 60.)  An "escape assessment" includes a correction of a base-year value under section 51.5, such as the assessment that the Greenspans appealed here.  (*Sunrise Retirement Villa v. Dear* (1997) 58 Cal.App.4th 948, 956–957; see also *Prang v. Los Angeles County Assessment Appeals Bd. No. 2 (*2020) 54 Cal.App.5th 1, 14–17.)

## DISPOSITION

The judgment of the trial court is reversed.  The trial court is directed to enter a new judgment vacating the decision of the Board and remanding the matter to the assessment appeals board for a new hearing.  Appellants are awarded their costs on appeal.


MORI, J.


We concur:


COLLINS, Acting P. J.


ZUKIN, J.